# Illinois Official Reports

## Appellate Court

---

### *People v. Simon*, 2017 IL App (1st) 152173

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALSTORY SIMON, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-15-2173 |
| Filed | May 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 99-CR-7699; the Hon. Thomas Byrne, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Andrew M. Hale and Amy A. Hijjawi, of Hale Law LLC, of Chicago, Terry A. Ekl and Tracy L. Stankler, of Ekl, Williams & Provenzale, LLC, of Lisle, and James. G. Sotos, of Sotos Law Firm, PC, of Itasca, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Presiding Justice Connors and Justice Harris concurred in the judgment and opinion. |

¶ 1    Alstory Simon (petitioner) appeals from a circuit court order denying his petition for a certificate of innocence. Petitioner argues that the circuit court erred when holding that he voluntarily caused his own conviction and when denying his petition based on the lack of State's misconduct. For the following reasons, we vacate the order and remand the case for further proceedings.

¶ 2                            BACKGROUND

¶ 3    The petition alleged the following facts. On September 7, 1999, petitioner pleaded guilty to the murder of Marilyn Green and the voluntary manslaughter of Jerry Hillard and was sentenced to concurrent terms of 37 years and 15 years, respectively. On October 14, 2014, petitioner's convictions and sentences were vacated. On January 28, 2015, petitioner filed his verified petition for a certificate of innocence pursuant to section 2-702 of the Illinois Code of Civil Procedure (735 ILCS 5/2-702 (West 2012)).

¶ 4    Anthony Porter was previously found guilty in the murders of Marilyn Green and Jerry Hillard in September 1982 and sentenced to death. In late 1988, with the execution of Porter approaching, Northwestern Medill journalist professor David Protess, private investigator Paul Ciolino, and several Medill journalism students began to investigate Porter's case in an attempt to free him from death row. To claim Porter's innocence, Protess and Ciolino needed an alternate suspect. Although petitioner's name was never mentioned in the police investigation, over the course of several weeks, Protess and Ciolino fabricated four pieces of evidence in an attempt to dismantle the case against Porter and frame petitioner.

¶ 5    In December 1998, Protess had Ciolino obtain an affidavit from eyewitness William Taylor. Taylor witnessed the murders of Green and Hillard in the bleachers of the pool in Washington Park and testified at Porter's trial that he saw Porter shoot Hillard and Green. Ciolino approached Taylor and convinced him to sign an affidavit, recanting his trial testimony and indicating that Taylor never saw Porter the night of the crimes. The affidavit omitted the portion of Taylor's statement that he did see Porter run past him that night as Porter fled the scene of the crime and that there was no doubt in Taylor's mind that Porter committed the murders.

¶ 6    Next, after receiving his name from Porter, Protess made inmate Walter Jackson a number of promises to induce Walter to sign an affidavit claiming that petitioner had told him, 17 years earlier, that he shot Hillard and Green. Walter called petitioner's estranged wife, Inez Jackson, to convince her to help Protess free Porter from prison and to frame petitioner.

¶ 7    On January 29, 1999, Protess, Ciolino, and two Medill students visited Inez Jackson in Milwaukee, Wisconsin, and obtained her affidavit that implicated petitioner in the 1982 murders. In her statement, Inez falsely indicated that she was with petitioner when he shot Hillard and Green.

¶ 8    Petitioner alleged that Ciolino and one of his partners duped petitioner into filming a confession. Initially, in December 1998, Protess sent two of his female students to petitioner's house to interview him. After the students left the house, Protess confronted petitioner and accused him of the murders. Then, Protess sent Ciolino to force a confession from petitioner. On February 3, 1999, Ciolino impersonated a police officer and entered petitioner's home

while armed with a handgun and detained him there. Petitioner was under the influence of narcotics at the time. Ciolino used a variety of tactics to obtain a false confession from petitioner, including threats, fabricated evidence, false statements, promises, and money.

¶ 9     Ciolino showed petitioner a videotape of a man, who falsely claimed that he saw petitioner commit the murders. He threatened petitioner and mentioned that he would hate to see petitioner have an accident in his home. He showed petitioner the broadcast of Walter Jackson's and Inez's statements claiming that petitioner committed the murders. Ciolino told petitioner that he was facing the death penalty, that police were on their way to petitioner's home to arrest him, and that he could only avoid the death penalty by providing a statement that he shot the victim in self-defense. Ciolino also told petitioner that he had to act quickly because Ciolino could no longer help him once the police arrived.

¶ 10    Ciolino promised petitioner that he would receive free legal representation, that Protess would ensure he received a short sentence, and that he would obtain large sums of money from books and movie deals. Petitioner rehearsed a statement with Ciolino and then provided a videotaped statement claiming responsibility for the 1982 murders. Protess immediately provided petitioner's confession videotape to CBS-TV, who played the confession on local television. The next day, Porter was released from custody and petitioner was arrested.

¶ 11    Ciolino arranged for his friend, attorney Jack Rimland, to represent petitioner free of charge. Petitioner alleged that Rimland never truly represented petitioner's interests. Instead, Rimland ensured that petitioner's false confession, the witnesses' statements, and all of the inculpatory evidence against Porter would not be scrutinized. Before petitioner's arrest, Rimland stated publicly that "obviously if [petitioner] is charged, he's looking at the death penalty." Rimland represented petitioner through the proceedings in the circuit court.

¶ 12    The State brought four witnesses before the grand jury who testified they saw Porter with the victims at the scene of the crime. One of the witnesses specifically testified that it was Porter who shot the victims. The grand jury also heard testimony from Protess, Ciolino, and a number of Northwestern students who were involved in the investigation. The grand jury returned a true bill and indicted petitioner for the murder charges stemming from the 1982 murders.

¶ 13    Subsequently, on September 7, 1999, petitioner pleaded guilty to the murder of Green and the voluntary manslaughter of Hillard. Petitioner alleged that Rimland, acting in concert with Protess and Ciolino, coerced him into pleading guilty to the murders by lying about the evidence in the case, by concealing the overwhelming eyewitness grand jury testimony implicating Porter, and by threatening petitioner with the death penalty if he did not plead guilty. The trial court sentenced petitioner to concurrent terms of 37 years for the murder and 15 years for the voluntary manslaughter.

¶ 14    In 2001, petitioner filed a *pro se* postconviction petition claiming he was innocent and that he had been coerced into confessing to the murders. The circuit court denied the petition. However, in the following years the evidence construed to frame petitioner for the murders proved to be unreliable. In January 2006, Walter Jackson admitted that petitioner never told him that he committed the murders. Walter Jackson explained that he provided a false statement because Porter saved him from being "shanked" in prison and because Protess promised him money and that he would help him get out of prison. In November 2005, Inez Jackson also admitted that her statement implicating petitioner was false and that she agreed to give a false statement because Protess promised her money from movie and book deals and

help to get her nephew and son released from prison. In addition, Ciolino publicly bragged about coercing petitioner to confess and stated that "we bull-rushed him, and mentally he couldn't recover."

¶ 15    In October 2013, the Cook County State's Attorney's office launched an investigation into petitioner's conviction in the light of the evidence that Protess interfered with the criminal justice process and severely impacted the integrity of the conviction. On October 30, 2014, the State's Attorney's office requested that the circuit court vacate the murder and voluntary manslaughter charges against petitioner. The circuit court vacated petitioner's conviction and he was released from custody. In a press release, State's Attorney Anita Alvarez criticized Protess and Ciolino for their "alarming tactics that were not only coercive but absolutely unacceptable by law enforcement standards."

¶ 16    On January 28, 2015, petitioner filed the instant petition for a certificate of innocence. The State intervened in the proceedings but did not file a response and indicated it had no position on the petition. Following a hearing, on June 18, 2015, the court issued a written ruling. The court denied the petition holding that petitioner's willful participation in the plan to free Porter precluded him from obtaining relief. The court also held that petitioner was not entitled to relief when his claims failed to include any allegations of misconduct on behalf of the State. This appeal follows.

¶ 17                                     ANALYSIS

¶ 18    To obtain a certificate of innocence under section 2-702 of the Code of Civil Procedure (Act), a petitioner must prove by a preponderance of the evidence that:

> "(1) [he] was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;
>
> (2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either [he] was found not guilty at the new trial or [he] was not retried and the indictment or information dismissed; ***
>
> (3) [he] is innocent of the offenses charged in the indictment or information ***; and
>
> (4) [he] did not by his *** own conduct voluntarily cause or bring about his *** conviction." 735 ILCS 5/2-702(g) (West 2012).

¶ 19    The petitioner must attach documentation to the petition that demonstrates (1) that he has been convicted of a felony by the State of Illinois, was sentenced to prison, and served all or any part of the sentence; (2)(a) that the conviction was reversed or vacated and the charging instrument was dismissed or, if a new trial was ordered, that he either was found not guilty on retrial or was not retried and the charging instrument was dismissed or (2)(b) that the statute underlying the charging instrument or its application was unconstitutional; and (3) that the claim is not time-barred under section 2-702(i) (735 ILCS 5/2-702(i) (West 2012)). 735 ILCS 5/2-702(c) (West 2012). The petition must also allege facts in sufficient detail to allow the court to find that the petitioner is likely to succeed at trial in proving that he is innocent or that his acts and omissions did not constitute a felony or a misdemeanor against the State of Illinois. 735 ILCS 5/2-702(c) (West 2012). The defendant must also verify the petition. 735 ILCS 5/2-702(d) (West 2012).

¶ 20    Whether or not a petitioner is entitled to a certificate of innocence is generally committed to the sound discretion of the court. *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 17 (citing *Rudy v. People*, 2013 IL App (1st) 113449, ¶ 11). However, "[t]he interpretation of a statute is a question of law that is reviewed *de novo*." *People v. Fields*, 2011 IL App (1st) 100169, ¶ 18.

¶ 21    In the instant case, although the State intervened in the proceedings, it elected not to object to the proceedings, did not introduce any evidence to refute the facts in the petition, and did not oppose the petition. The court held that petitioner met the first three requirements under of the Act. Petitioner was convicted, served time in the Illinois Department of Correction, and the indictment against him was dismissed. The court held that petitioner met his burden of establishing his innocence by a preponderance of the evidence and it was more likely true than not that he was actually innocent in the murders of Hillard and Green. Notwithstanding its finding of actual innocence, the court denied the petition on the ground that petitioner did not establish that he did not voluntarily cause his conviction and because petitioner's claim did not involve any allegations of misconduct on behalf of the State.

¶ 22    The court held that the circumstances surrounding petitioner's guilty plea indicated that he was a willing participant in Protess's corrupt scheme to free Porter, a convicted murderer, and to frame petitioner, an innocent man. The court relied on three pieces of evidence for its determination that petitioner willfully participated in Protess's well developed plan to overturn Porter's conviction: petitioner's statements made in allocution at the conclusion of his guilty plea hearing, some excerpts from petitioner's *pro se* petition for postconviction relief, and a newspaper article containing petitioner's statements made to a news reporter. The court indicated that these documents were submitted by petitioner.

¶ 23    On appeal, petitioner argues that the trial court erred when it determined that he voluntarily caused or brought about his conviction. Petitioner claims that the court erroneously relied on inadmissible evidence, outside the evidentiary record, in an attempt to rebut the well-pleaded facts in his petition to find support for the conclusion that petitioner voluntarily caused his conviction. Petitioner maintains that, even assuming that the court properly relied on admissible evidence, he had no notice of the evidence used by the trial court and no opportunity to counter or argue that it was not probative of the issue that he voluntarily caused his own conviction. We agree.

¶ 24    We are mindful that the Act does not contain well-defined procedural instructions on how to proceed in a case where the State, although it intervenes, does not object to the proceedings and does not present any evidence to rebut a petitioner's claim for a certificate of innocence. The Act indicates that the proceedings are adversarial in nature, and just as in any adversarial proceedings, the petitioner has the right to fully present his case. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 391 (2001). The Act states that the court has wide discretion regarding the "weight and admissibility of the evidence *submitted*." (Emphasis added.) 735 ILCS 5/2-702(a) (West 2012).

¶ 25    Petitioner attached eight exhibits consisting mostly of excerpts from trial or grand jury testimony, and none contained the three pieces of evidence upon which the trial court relied when concluding that petitioner voluntarily caused his conviction. The evidence used by the trial court to determine that petitioner caused his conviction was not "submitted" by petitioner or by the State. Unlike a typical innocence proceeding, where the State submits a response to the petition and the court conducts a hearing and makes credibility and factual findings regarding the evidence after that hearing, here, the State did not present any evidence or

testimony to rebut petitioner's claim. Had the State done so, petitioner could have countered the evidence, objected to it being admitted, and cross-examined the State's potential witnesses.

¶ 26     Here, similarly, petitioner should not be deprived of his right to respond to the evidence used as the basis for finding that he caused his own conviction. The court, on its own, pointed to certain evidence and used it to deny petitioner's request without giving him a meaningful opportunity to object to it. Just as in any other adversarial proceedings, petitioner must have opportunity to object to the admissibility and the probative value of the evidence used to deny his claim. See *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998). A contrary position would place the State at a strategic advantage by simply not taking any position in the proceedings and lead to unfair surprise for the petitioner. Therefore, given the unique posture of the case, we remand the matter to the trial court for an evidentiary hearing where petitioner would be able to object to the admissibility, the probative value of the evidence, and for an opportunity to present evidence in support of his claim that he did not voluntarily cause his own conviction.

¶ 27     Notably, we are not making any determination regarding the merits of petitioner's petition, and our ruling does not mean that, after conducting the hearing, the court cannot deny the certificate of innocence for the reason that petitioner failed to establish that he caused his own conviction based on admissible, probative evidence. *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 17 ("[w]hether or not a petitioner is entitled to a certificate of innocence is generally committed to the sound discretion of the court").

¶ 28     Finally, we disagree with the trial court's determination that petitioner cannot obtain relief in the court of claims because the State was not involved in the wrongdoing that generated petitioner's wrongful incarceration. The court held that, although not in the statute, a common sense interpretation of the Act requires the State's wrongdoing in order for petitioner to be able to obtain monetary damages in the court of claims. But, whether the State engaged in any misconduct that resulted in a petitioner's wrongful conviction has no bearing on petitioner's request for a certificate of innocence. The Act specifically identifies the four elements that a petitioner must prove by a preponderance of the evidence in order to obtain a certificate of innocence, and none of those require a petitioner to prove that he or she was convicted as a result of misconduct committed by the State. 735 ILCS 5/2-702(g) (West 2012).

¶ 29     Moreover, the court's narrow interpretation of the Act in the absence of any such language denies remedy to numerous meritorious wrongful convictions claims that do not arise from any misconduct on the part of the government. See, *e.g.*, Cynthia E. Jones, *The Right Remedy for the Wrongly Convicted: Judicial Sanctions for Destruction of DNA Evidence*, 77 Fordham L. Rev. 2893, 2928 (2009) (citing eyewitness identifications and testimony of jailhouse informants as two of the leading causes of wrongful conviction).

¶ 30     Furthermore, the only matter before the circuit court was whether to grant or deny the petition for a certificate of innocence. Whether the court of claims has jurisdiction over a case brought in the court of claims for monetary relief is for the court of claims, not the circuit court to decide. Therefore, the court erroneously held that petitioner cannot obtain his certificate of innocence because he did not establish that the State caused his wrongful incarceration.

¶ 31     Under the Act the only issue for the circuit court's consideration was whether or not petitioner proved the four elements articulated in subsection (g) by a preponderance of the evidence. 735 ILCS 5/2-702(g) (West 2012). The court determined that petitioner met the first three elements. We are remanding the case for a hearing where petitioner has an opportunity to

prove that he did not voluntarily cause his own conviction.

¶ 32                                    CONCLUSION
¶ 33        Based on the foregoing, we vacate the trial court's order denying petitioner's certificate of innocence and remand the case for further proceedings consistent with this opinion.

¶ 34        Vacated and remanded.