2022 IL App (1st) 192184

FIRST DISTRICT
FOURTH DIVISION
March 31, 2022

No. 1-19-2184

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Respondent-Appellee, | ) ) | |
| v. | ) ) | No. 13 CR 3697 |
| TINO TERRELL, | ) ) ) | |
| Petitioner-Appellant. | ) ) ) ) ) | Honorable LeRoy K. Martin, Jr., Judge Presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner, Tino Terrell, appeals from the denial of his petition for a certificate of

innocence filed pursuant to section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-

702 (West 2018)). In 2013, petitioner was charged with 11 counts of unlawful possession of a

weapon by a felon, two counts of possession with intent to deliver a controlled substance, one

count of possession of cannabis with intent to deliver, and one count of possession with intent to

deliver methamphetamine. Petitioner was found guilty on all counts except for possession with

intent to deliver methamphetamine and was sentenced to 15 years' imprisonment. Petitioner appealed, arguing that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. This court agreed with petitioner and reversed his convictions. *People v. Terrell*, 2017 IL App (1st) 142726, ¶¶ 31, 33.

¶ 2    Thereafter, petitioner filed the petition for a certificate of innocence in the case at bar. Petitioner asserted he was innocent of the charges. After the matter was fully briefed, the circuit court conducted a hearing on the petition. Ultimately, the circuit court found that petitioner had not proven he was innocent of the criminal charges by a preponderance of the evidence and denied the petition.

¶ 3    Petitioner argues on appeal that the circuit court abused its discretion in denying his petition as it applied an improper burden of proof and that the petitioner did, in fact, demonstrate his innocence so as to warrant granting the petition. For the following reasons, we affirm the circuit court's judgment.

¶ 4                          BACKGROUND

¶ 5    At the bench trial, Officer Robert Gallas (Officer Gallas) testified that on January 17, 2013, he was assigned to a gang unit tasked with executing a search warrant at 6809 South Laflin Street, which was a two bedroom first floor apartment in Chicago, Illinois (apartment). At approximately 9 p.m., his unit entered the apartment. The apartment door was barricaded with a "scissor gate" with a large padlock. While police attempted to open the door, the lessee of the premises, who was later determined to be Edward McDaniel (McDaniel), came to the door. As McDaniel would not promptly open the door and the padlock was too large to be cut with large bolt cutters, the team used a "Chicago bar" and sledgehammer to pull the scissor gate from its

hinges and enter the apartment.[1] Upon entering, Officer Gallas noted that the rear door was barricaded with two-by-fours. According to Officer Gallas, the only two doors used to enter the apartment were barricaded.

¶ 6     Officer Gallas further testified that he could not recall recovering any evidence which would indicate that petitioner or McDaniel resided at the apartment. In addition, no drugs were found on petitioner when he was searched by officers, and nothing was found on his person which indicated petitioner resided in the apartment.

¶ 7     Officer Dan Pacelli (Officer Pacelli) testified that he was also assigned to the team executing the search warrant. He testified that he searched the dining room and front living room area of the apartment. While conducting his search, Officer Pacelli found two prescription bottles with petitioner's name on them in the living room next to the couch.[2] The trial court noted that the address on the pill bottles differed from that of the apartment. One of the bottles had a "use by" date of August 24, 2013, and the date August 24, 2012, was also written on the same bottle. The other bottle had a date of issuance of May 23, 2012. One of the bottles still contained pills, while the other was empty. While in the living room, Officer Pacelli also recovered alongside the prescription bottles an adult probation card which bore petitioner's name. Petitioner's passport was also found in the same area as the bottles and the probation card.

¶ 8     Officer Pacelli additionally recovered two duffel bags from atop the dining room china cabinet. The bags contained clothing which appeared to fit a male larger than himself. Officer Pacelli described himself as six feet one inch tall and weighing 250 pounds. The trial court noted that petitioner was larger in size than Officer Pacelli and was wearing a size 4XL tan Department

---

[1]The record does not contain a definition for the terms "scissor gate" and "Chicago bar."

[2]There is no evidence in the record that indicates what type of medication was contained in the pill bottles or any instructions regarding how the pills were to be taken.

of Corrections uniform. Officer Pacelli also noted that McDaniel was of smaller proportions, approximately six feet tall and 160-165 pounds.

¶ 9    Officer Michael O'Connor (Officer O'Connor) testified that he was also a member of the search warrant team on January 17, 2013. He stated that there were paintings and photographs "all over" the front living room and that he recovered a framed photograph which included petitioner.

¶ 10    Officer Gus Bedoy testified that he searched the whole house and found nothing in the bathroom, kitchen, or either bedroom demonstrating that petitioner lived in the apartment. According to Officer Bedoy, nothing in the bedrooms demonstrated petitioner resided at the apartment and nothing in the bathrooms appeared to indicate that petitioner or McDaniel resided in the apartment. Officer Bedoy, while searching a hallway closet, noticed U-shaped scratches on the side of each wall. Part of the panel on the wall was loose, which led him to look inside. Officer Bedoy found metal tracks inside the wall and uncovered a large, clear, plastic bag which he suspected contained cannabis. The hidden compartment, commonly referred to as a trap, was three feet wide, three feet high, and approximately two feet deep and was constructed using two-by-fours. The opening mechanism operated using common parts utilized for an automobile power window, which included metal rails, a battery, power motor, and plastic bands.[3] The trap contained multiple weapons, United States currency, digital scales, and mixing containers and agents commonly used in the preparation of drugs.

¶ 11    Federal Bureau of Investigation Special Agent Christopher Weismantel testified that, during the search, he went out to his vehicle and observed a red pickup truck parked behind him. His vehicle was parked almost directly in front of the apartment, and Agent Weismantel had

---

[3]The record on appeal does not contain the photographs of the hidden compartments contained in the apartment or pickup truck.

been previously informed that the pickup truck might belong to petitioner. After noticing petitioner sitting in the driver's seat of the pickup truck, Agent Weismantel approached him, engaged him in conversation, and asked him to come inside the apartment, where petitioner was ultimately arrested.

¶ 12    Officer Gallas searched petitioner and testified that he could not recall finding any drugs on him or anything indicating that petitioner lived at the apartment.

¶ 13    Sergeant Michael Karczewski testified that he read petitioner his *Miranda* rights at the apartment. Sergeant Karczewski further testified that later, at the police station, petitioner gave the police a signed written consent to search the pickup truck.

¶ 14    Officer Bedoy testified that, while searching petitioner's vehicle, he discovered a trap hidden behind the radio compartment. The trap resembled the one found inside the hallway closet in the apartment. Specifically, he noted that the motorized bands and insulation in the two traps were similar in composition and nature; however, he could not tell whether the same person installed them. He also stated that the parts used were common and could be purchased at any electronics or auto parts store.

¶ 15    Officer Vincent Ciocci, an evidence officer, testified that he recovered seven firearms and eight boxes of ammunition from the trap inside the apartment. The parties stipulated that the weapons recovered consisted of the following firearms: a .45-caliber handgun, a loaded 9-millimeter Ruger, a loaded 9-millimeter Beretta, a .357-caliber handgun, a .765-caliber handgun, a loaded 9-millimeter CPX1, and a 9-millimeter Taurus. In addition, Officer Ciocci recovered multiple bags containing various substances that he inventoried and delivered to the Illinois State Police Crime Lab.

¶ 16    The parties stipulated that, if called to testify, Soretta Patton, a forensic chemist employed

by the Illinois State Police Crime Lab, would testify that she received the inventory envelopes from the Chicago Police Department and found they contained a total of 428.2 grams of cocaine, 100.3 grams of heroin, 273.5 grams of cannabis, and .3 grams of methamphetamine.

¶ 17    At trial, the State introduced a certified copy of petitioner's previous conviction for possession of a controlled substance, under case number 11 CR 0855601, in which petitioner was sentenced to 24 months of probation on September 10, 2012. The State also submitted a certified vehicle record demonstrating petitioner's ownership of the pickup truck. The address listed on the vehicle record was 7224 South Marshfield Avenue, Chicago, Illinois.

¶ 18    Defense witness David Cole testified that he owned the building located at 6809 South Laflin Street for 14 years and described it as consisting of two floors; McDaniel had been the lessee of the first floor apartment since 2011. Cole testified that he did not know petitioner. In addition, Cole had only been inside the apartment once, and every month McDaniel would step outside of the apartment and hand Cole the rent.

¶ 19    After hearing closing arguments, the trial court found petitioner guilty on all counts except the methamphetamine charge. In so finding, the trial court articulated that the totality of the evidence demonstrated petitioner resided at the apartment—the two prescription bottles, one with unexpired medication inside, the current passport, the duffel bags of clothing that could fit petitioner but not McDaniel, and the probation card. The trial court explained that the probation card was particularly probative of petitioner's residence, as it had a last appointment date of December 2012 and an upcoming appointment date of January 27, 2013, which was only days after the search warrant was executed. The trial court found that petitioner's constructive possession of the contraband was corroborated by a similar hidden compartment being found in his pickup truck. The trial court also found that the only doors into the apartment were

barricaded, which constituted circumstantial evidence of petitioner's knowledge that contraband was inside the apartment. The trial court further found that these security measures (the scissor gate, large padlock, and two-by-fours) went beyond what was typical for a residence in that neighborhood.

¶ 20    On July 14, 2014, the trial court denied petitioner's motion for a new trial. Petitioner was then sentenced to 15 years' imprisonment on count one (720 ILCS 570/401(a)(2)(C) (West 2012)).[4]

¶ 21    Petitioner filed an appeal with this court, in which he asserted that the evidence was insufficient to prove beyond a reasonable doubt that he constructively possessed the drugs and weapons. This court agreed and reversed petitioner's convictions. *Terrell*, 2017 IL App (1st) 142726, ¶¶ 31, 33.

¶ 22    Subsequently, in 2019, petitioner filed a petition for a certificate of innocence in the circuit court, pursuant to section 2-702 of the Code (735 ILCS 5/2-702 (West 2018)). Petitioner alleged that he should be issued a certificate of innocence as (1) he had been convicted of a felony and sentenced to a term of incarceration of 15 years' imprisonment, of which he served over four years of incarceration, (2) the appellate court reversed and vacated his conviction on April 14, 2017, and (3) there was no evidence linking him as a resident in the home and to the contraband found in the hidden compartment in the hallway ceiling. Appended to his petition was a copy of the search warrant affidavit, the appellate court order vacating his conviction, and an order granting petitioner immediate release from custody.

¶ 23    Officer Gallas averred in the search warrant affidavit that on January 17, 2013, he had a conversation with a confidential informant who informed him that in the last 48 hours he had

---

[4]Specifically, the trial court merged counts one and two. It also merged counts three and five through 15. All counts were ordered to run concurrently.

been to petitioner's first floor apartment located at 6809 S. Laflin Street in Chicago for the purpose of purchasing cannabis. The confidential informant stated that petitioner permitted him entry into the first floor apartment where they negotiated the purchase of cannabis. After coming to an agreement on the price, the confidential informant observed petitioner go into another room in the apartment and return with a bag containing smaller bags of cannabis. Petitioner gave the confidential informant the agreed amount of cannabis in exchange for the currency. The confidential informant then observed petitioner return to the apartment with the remaining bags of cannabis. The confidential informant also stated that within the last month he has been in the first floor apartment on Laflin Street on more than two occasions for the purchase of cannabis and has never been denied cannabis. The confidential informant also stated that he has knowledge that petitioner resides in the first floor apartment. Officer Gallas further averred that on January 17, 2013, he went with the confidential informant to the apartment and the confidential informant confirmed the apartment was the one where he purchased cannabis. Officer Gallas attested that he showed the confidential informant a photograph of petitioner from the police database and the confidential informant identified petitioner, an African-American man, six-foot-four inches in height, and weighing 300 pounds.

¶ 24    In response, the State maintained that petitioner failed to demonstrate he was entitled to a certificate of innocence by a preponderance of the evidence. The State asserted that petitioner's request was based on the "flawed premise" that just because his convictions were set aside, he is entitled to be declared innocent of those offenses, when, in fact, it is petitioner's burden to demonstrate that he is innocent by a preponderance of the evidence. The State argued that the evidence presented at trial established that petitioner was not just an innocent bystander but that he had control over various items of contraband which were recovered from the residence. Such

control was demonstrated by the various personal items petitioner had in the residence, including his probation card, which had recent and relevant entries. In addition, the hidden compartment inside the residence was identical to the hidden compartment found inside petitioner's vehicle, as both had similar construction designs and materials. The hidden compartments further functioned in the same manner. Moreover, the facts presented in the search warrant affidavit established that petitioner was the individual who sold drugs to the confidential informant at the residence. The State asserted that the standard here was not proof beyond a reasonable doubt, but that petitioner was required to prove he was innocent of the criminal offenses by a preponderance of the evidence and maintained his petition should be denied.

¶ 25    In reply, petitioner asserted that he established by a preponderance of the evidence that he lacked constructive possession of the contraband found in the hidden compartment. Petitioner noted that the State failed to point to any evidence which demonstrated he actually knew and had control over the various contraband items. Petitioner observed that in the appellate court decision reversing his convictions, the court noted that despite his personal items being found inside the residence, the State failed to prove that he ever entered the home, much less that he had knowledge of the contents of the hidden compartment. Again relying on the appellate court decision, petitioner maintained that the similarities between the hidden compartments in the residence and in his vehicle were irrelevant, as the vehicle's hidden compartment contained no drugs, weapons, or paraphernalia and the State presented no physical evidence indicating anything had been in the vehicle's hidden compartment. Regarding the contents of the search warrant affidavit, petitioner asserted that—despite having attached it to his petition—it was not admissible evidence and should not be considered by the circuit court in determining innocence

as it was not subject to cross-examination.[5] Petitioner further argued that, regardless of the search warrant affidavit's admissibility, the confidential informant's statements were irrelevant as to the issue of whether petitioner knew of the hidden compartment and the contraband contained therein.

¶ 26    Petitioner also attached his own affidavit to his reply. In his affidavit, petitioner averred that he "never lived at Edwin McDaniel's home located at 6809 South Laflin in Chicago, Illinois"; that "[a]t the time I was arrested, I lived with my mother at 1233 Price Avenue in Calumet City, Illinois"; that "I would visit my uncle at his home from time to time"; that "I did not have a key to my uncle's home"; that "I did not know my uncle had a hidden compartment in his hallway closet"; that "I did not know he had items hidden in a hidden compartment in his hallway"; and that "I did not own the items that were found in his hidden hallway compartment."

¶ 27    The parties agreed to a hearing on the merits of the petition without an evidentiary hearing. After hearing extensive argument, the circuit court denied petitioner's request for a certificate of innocence. In so ruling, the circuit court focused on the fact that while the appellate court reversed petitioner's convictions, that decision merely established that the State failed to prove petitioner guilty of the charges beyond a reasonable doubt. The circuit court stressed that a proceeding for a certificate of innocence required a different standard, *i.e.*, the burden was on the petitioner to establish by a preponderance of the evidence that he was innocent of the offenses as charged. The circuit court, therefore, found petitioner did not meet that burden in light of the evidence presented at trial, along with the documents and affidavits appended to his petition. This appeal followed.

---

[5]This argument was never raised before the circuit court during the hearing on the petition, and the record does not contain a request from petitioner for a ruling on this issue.

¶ 28                                    ANALYSIS

¶ 29    Petitioner contends on appeal that the circuit court erred when it applied the wrong

standard in evaluating whether his petition for a certificate of innocence should be granted.

Specifically, petitioner asserts that the circuit court's interpretation of the words "preponderance

of the evidence" as it appears in section 2-702 was in error where the circuit court interpreted

these words so as to negate his presumption of innocence. Petitioner thus challenges the circuit

court's interpretation of section 2-702 and proposes that, in order to maintain his fundamental

right to a presumption of innocence, section 2-702 must be read so as to require the petitioner to

establish "some evidence" of his innocence. As he met that burden, the burden then shifted to the

State for it to prove he was not innocent by a preponderance of the evidence. According to

petitioner, this is the only way to construe section 2-702 so as to preserve its constitutionality.

We observe, however, that petitioner in his briefs strongly asserts that he is not challenging the

constitutionality of section 2-702, but merely claims the circuit court's interpretation of his

burden of proof violated his due process rights and that the evidence he presented in support of

his petition demonstrated that he is innocent.

¶ 30                          Section 2-702 of the Code

¶ 31    Our analysis begins with an overview of the statutory framework that governs the

procedures for obtaining the issuance of a certificate of innocence. The statute instructs that a

circuit court presented with a petition seeking a certificate of innocence "shall, in the interest of

justice, give due consideration to difficulties of proof caused by the passage of time, the death or

unavailability of witnesses, the destruction of evidence or other factors not caused by such

persons or those acting on their behalf." *Id.* § 2-702(a).

¶ 32    Consistent with these goals, section 2-702 authorizes any person convicted and

subsequently imprisoned for a crime which they did not commit to file a petition seeking a certificate of innocence finding that the petitioner was innocent of all offenses for which they were incarcerated. *Id.* § 2-702(b). To present a claim seeking a certificate of innocence, the petitioner must attach supporting documentation demonstrating certain prerequisites, including the timeliness of the claim. *Id.* § 2-702(c), (i). The petition must also be verified by the petitioner and state sufficient facts to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the offenses charged in the indictment. *Id.* § 2-702(d).

¶ 33    A copy of the petition must also be served on the Attorney General and the state's attorney of the county where the conviction was obtained, and either entity has the right to intervene as a party in the proceeding. *Id.* § 2-702(e). In any hearing on the petition, the court is allowed to take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings that resulted in the alleged wrongful conviction. *Id.* § 2-702(f). A person who secures a certificate of innocence may file a petition in the state's Court of Claims, seeking compensation. *People v. Hood*, 2021 IL App (1st) 162964, ¶ 22; see also *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993) ("[a] certificate of innocence serves no purpose other than to permit its bearer to sue the government for damages").

¶ 34                                    Forfeiture

¶ 35    Petitioner's main contention on appeal is that the circuit court's construction of section 2-702, which required him to prove his innocence, violated his due process rights as it ran afoul of the presumption of innocence. In response, the State asserts that petitioner has forfeited this argument, as he failed to raise it first before the circuit court. The State further maintains that as this case was civil in nature, there is no presumption of innocence that applies in a certificate of innocence proceeding.

¶ 36    Petitioner's argument on appeal is that the circuit court's decision and reasoning resulted in the loss of the presumption of innocence and its application of the wrong burden of proof and, therefore, his due process rights were violated. Generally, issues not raised in the circuit court are forfeited. See *People v. Smith*, 2021 IL App (1st) 200984, ¶ 15 (discussing forfeiture within the context of a certificate of innocence proceeding); but see Ill. S. Ct. R. 366(b)(3)(iii) (eff. Feb. 1, 1994) (which provides that in civil bench trials a failure to file a posttrial motion does not limit the scope of review). The purpose of the forfeiture rule is to encourage parties to raise issues in the circuit court, thus ensuring both that the circuit court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. In this case, petitioner is alleging it was the circuit court's decision and reasoning when ruling on the petition which resulted in the violation of his due process rights. While petitioner could have raised this issue in a motion to reconsider, he was not required to do so. See *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 12; Ill. S. Ct. R. 366(b)(3)(iii) (eff. Feb. 1, 1994). Accordingly, we will consider whether the trial court's decision resulted in the loss of his presumption of innocence.

¶ 37                          Presumption of Innocence

¶ 38    Whether the circuit court's decision resulted in the loss of petitioner's presumption of innocence requires us to look to the statute to determine whether the legislature intended such a presumption to exist in a certificate of innocence proceeding. We review issues of statutory construction *de novo*. *People v. Simon*, 2017 IL App (1st) 152173, ¶ 20. The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the legislature's intent. *Walker v. Agpawa*, 2021 IL 127206, ¶ 23. "And the best indicator of that intent is the language used, given its plain and ordinary meaning." *Id.*

¶ 39    In section 2-702, the legislature set out its clear intent:

"The General Assembly finds and declares that innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law and that such persons should have an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims. The General Assembly further finds misleading the current legal nomenclature which compels an innocent person to seek a pardon for being wrongfully incarcerated. It is the intent of the General Assembly that the court, in exercising its discretion as permitted by law regarding the weight and admissibility of evidence submitted pursuant to this Section, shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such persons or those acting on their behalf." 735 ILCS 5/2-702(a) (West 2018).

¶ 40    While the vacatur of his criminal convictions by the appellate court resulted in the return of the presumption of innocence regarding his criminal case, proceedings under the certificate of innocence statute are civil in nature and serve as an avenue to obtaining relief in the Court of Claims. See *id.*; see also *Wrice v. Byrne*, 488 F. Supp. 3d 646, 664 (N.D. Ill. 2020) (stating that "a certificate of innocence proceeding is not a criminal proceeding, and [the defendant] retains his presumption of innocence notwithstanding his certificate of innocence denial"). Thus, a certificate of innocence proceeding is a unique civil proceeding, created solely by statute, and is subject to the rules of civil procedure. See 735 ILCS 5/2-702 (West 2018); *Wrice*, 488 F. Supp. 3d at 664. As petitioner's ability to obtain a certificate of innocence is created solely by statute,

we are not at liberty to engraft conditions not within the purview of the statute. We observe that nowhere in the statute does it reference a petitioner's presumption of innocence. See 735 ILCS 5/2-702 (West 2018); *People v. McClinton*, 2018 IL App (3d) 160648, ¶ 20 (finding the legislative intent of the statute is to " 'distinguish between a finding of not guilty at retrial and actual innocence of the charged offenses' " (quoting *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 18)). Indeed, it would be incongruous for there to be a presumption of innocence in a certificate of innocence proceeding where the statute is explicit that the burden of proof is on the petitioner to prove by a preponderance of the evidence that he is innocent. See *People v. Williams*, 2016 IL 118375, ¶ 15 (it is presumed that the legislature did not intend absurd, inconvenient, or unjust results). "We cannot read into the statute a limitation not expressed." *People v. Buckner*, 2013 IL App (2d) 130083, ¶ 41. Accordingly, we cannot say that the circuit court violated petitioner's due process rights in this instance.

¶ 41                                       Proper Burden of Proof

¶ 42    We next consider petitioner's argument that the circuit court applied the wrong burden of proof when denying him a certificate of innocence.

¶ 43    Essentially, the issue presented is what a petitioner must prove in order to obtain a certificate of innocence. According to the statute, to obtain a certificate of innocence, a petitioner must prove "by a preponderance of evidence" the following four elements:

     "(1) the petitioner was convicted of one or more felonies by the State of Illinois

     and subsequently sentenced to a term of imprisonment, and has served all or any part of

     the sentence;

     (2)(A) the judgment of conviction was reversed or vacated, and the indictment or

     information dismissed or, if a new trial was ordered, either the petitioner was found not

guilty at the new trial or the petitioner was not retried and the indictment or information

dismissed; or (B) the statute, or application thereof, on which the indictment or

information was based violated the Constitution of the United States or the State of

Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or

information or his or her acts or omissions charged in the indictment or information did

not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring

about his or her conviction." 735 ILCS 5/2-702(g)(1)-(4) (West 2018).

¶ 44    Petitioner maintains that the circuit court improperly construed this statute to require him
to present "complete proof" of his innocence. He asserts that the correct interpretation of section
2-702 is to require a petitioner to present only "some evidence" of his innocence. Once his
burden of producing "some evidence" has been met, the burden then shifts to the State to present
evidence of the petitioner's guilt.

¶ 45    As recently discussed by our supreme court in *People v. Palmer*, 2021 IL 125621, ¶ 53,
an issue of statutory construction presents a question of law that is subject to *de novo* review. See
*People v. Johnson*, 2019 IL 123318, ¶ 14. As previously discussed, the fundamental goal of
statutory construction is to ascertain and give effect to the legislature's intent, best indicated by
the plain and ordinary meaning of the statutory language. *People v. Reese*, 2017 IL 120011, ¶ 30.
A reviewing court may also discern legislative intent by considering the purpose of the statute,
the problems to be remedied, and the consequences of interpreting the statute one way or
another. *People v. Bradford*, 2016 IL 118674, ¶ 15. It is presumed that the legislature did not
intend absurd, inconvenient, or unjust results. *Williams*, 2016 IL 118375, ¶ 15.

¶ 46    Section 2-702 clearly provides that "[i]n order to obtain a certificate of innocence the *petitioner must prove by a preponderance of evidence*" the four elements set forth in subsection (g). (Emphasis added.) 735 ILCS 5/2-702(g) (West 2018). The legislature thus expressly set forth that the burden is on the petitioner and did not provide for the shifting of this burden. In addition, when determining whether the petitioner is entitled to a certificate of innocence, the statute expressly states the burden of proof as being "a preponderance of evidence." While the statute does not define what "a preponderance of evidence" entails, it is evident from our jurisprudence that a preponderance of the evidence means "more probably true than not true." See *Simon*, 2017 IL App (1st) 152173, ¶ 21 (the court, in a proceeding under section 2-702 of the Code, considered a preponderance of the evidence to mean a proposition was "more likely true than not"); *Hood*, 2021 IL App (1st) 162964, ¶ 29 (finding that, under section 2-702 of the Code, it was the petitioner's "burden to show that it was more probably true than not true that he was innocent of the crimes charged"); see also *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 191 (2005) ("A proposition proved by a preponderance of the evidence is one that has been found to be more probably true than not true."); Illinois Pattern Jury Instructions, Civil, No. 21.01 (approved Dec. 8, 2011). To interpret this standard as to merely require "some evidence," as petitioner suggests, would fail to comport with the plain, ordinary meaning of a "preponderance of the evidence." See *Palmer*, 2021 IL 125621, ¶ 53.

¶ 47    We further reject petitioner's argument that the circuit court erred in its interpretation of the appellate court's decision. In his argument, petitioner contends that the circuit court's interpretation of the appellate court decision "cloaked Mr. Terrell with a presumption of guilt." Our reading of the record, however, reveals otherwise. Throughout the certificate of innocence hearing, petitioner argued that he had proven his innocence, as the appellate court stated in its

decision that there was "no evidence" which indicated that the petitioner resided in the apartment. In response, the circuit court emphasized the difference between the burden of proof required for a criminal case and the burden of proof for a certificate of innocence. Our case law is clear that the standards of proof between a criminal and civil case in this context are different. See *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 47 (observing that if the petitioner had presented certain evidence at trial "it may have served to cast doubt on the State's case in proving petitioner guilty beyond a reasonable doubt. However, petitioner's burden to prove that he is innocent by a preponderance of the evidence is a different, more exacting standard."); *Dumas*, 2013 IL App (2d) 120561, ¶ 19 ("[S]ection 2-702 requires a defendant to show by a preponderance of the evidence that he is actually innocent and that he did not act in a way that brought about his conviction. A mere reversal for failure to prove guilt beyond a reasonable doubt will not suffice."); *People v. Pollock*, 2014 IL App (3d) 120773, ¶ 37 ("the Code contemplates the differences between actual innocence and a finding by a court of review that no rational jury could find beyond a reasonable doubt that the State proved all the elements of the crimes charged"); *People v. Fields*, 2011 IL App (1st) 100169, ¶ 19 ("[W]e agree with the State that the plain language of section 2-702 shows the legislature's intent to distinguish between a finding of not guilty at retrial and actual innocence of the charged offenses."). The circuit court here consistently followed this case law and applied the appropriate burden of proof under the Code.

¶ 48                    Whether the Circuit Court Erred in Denying the Petition

¶ 49    Having determined that the circuit court applied the correct burden of proof to the evidence, we now consider the petitioner's final argument: whether the circuit court abused its discretion when it found he failed to prove by a preponderance of the evidence that he was

innocent of the offenses.

¶ 50                                Standard of Review

¶ 51    Prior to considering this issue, we will examine our standard of review. There is currently

some debate regarding the proper standard of review of a circuit court's denial of a petition for a

certificate of innocence. While it has been well-settled that the determination of whether a

petitioner is entitled to a certificate of innocence is committed to the discretion of the circuit

court (see *Gomez*, 2021 IL App (1st) 192020, ¶ 40; *Rudy v. People*, 2013 IL App (1st) 113449,

¶ 11; *Dumas*, 2013 IL App (2d) 120561, ¶ 17), recently, the Fifth Division of the First District

found the "manifest weight of the evidence" standard to be more applicable (see *People v.*

*McIntosh*, 2021 IL App (1st) 171708, ¶ 40 (discussing *Best v. Best*, 223 Ill. 2d 342 (2006)). We

observe that both the "abuse of discretion" standard and the "against the manifest weight"

standard are deferential standards of review. Compare *Hood*, 2021 IL App (1st) 162964, ¶ 23

(defining abuse of discretion as where the circuit court's decision is arbitrary, fanciful, or

unreasonable to the degree that no reasonable person would agree with it), with *Best*, 223 Ill. 2d

at 350 ("A finding is against the manifest weight of the evidence only if the opposite conclusion

is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence

presented."); see also 735 ILCS 5/2-702(a) (West 2018) (stating the circuit court has discretion

when determining the "weight and admissibility of evidence submitted pursuant to this

Section"). We find that, regardless of which deferential standard is applied, the circuit court did

not err in its denial of the petition.

¶ 52    Here, there is no question the only element of section 2-702(g) at issue is whether

petitioner proved by a preponderance of the evidence that he was innocent of the offenses as

charged. See 735 ILCS 5/2-702(g)(3) (West 2018). The evidence presented during the hearing

consisted of the search warrant affidavit, petitioner's affidavit, and the trial evidence and testimony. See *id.* § 5/2-702(f) (in a certificate of innocence hearing, the court may take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions which resulted in the alleged wrongful incarceration). While neither party addresses the propriety of the circuit court's reliance on the search warrant affidavit which was attached to the petition, we find it is incumbent upon us to first address this issue.

¶ 53    It is evident from the record that the search warrant affidavit was not admitted as evidence in petitioner's criminal trial. Thus, the question here is whether the circuit court may consider the search warrant affidavit where it was attached as an exhibit to petitioner's petition. Resolving this issue requires this court to interpret the statute; accordingly, our standard of review is *de novo*. *Simon*, 2017 IL App (1st) 152173, ¶ 20.

¶ 54    The pertinent section of the statute at issue provides:

"(c) In order to present the claim for certificate of innocence of an unjust conviction and imprisonment, *the petitioner must attach to his or her petition documentation demonstrating that*:

(1) he or she has been convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and

(2) his or her judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either he or she was found not guilty at the new trial or he or she was not retried and the indictment or information dismissed; or the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of

Illinois; and

(3) his or her claim is not time barred by the provisions of subsection (i) of this Section.

(d) The petition shall state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State of Illinois, and the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction. The petition shall be verified by the petitioner." (Emphasis added.) 735 ILCS 5/2-702(c), (d) (West 2018).

¶ 55    In addition, as previously discussed, the General Assembly set forth its intent when "exercising its discretion as permitted by law regarding the weight and admissibility of evidence submitted pursuant to this Section" the circuit court "shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such persons or those acting on their behalf." *Id.* § 5/2-702(a). Furthermore, other courts have interpreted section 2-702(a) to mean that "the court has wide discretion regarding the 'weight and admissibility of the evidence *submitted*.' " (Emphasis in original.) *Simon*, 2017 IL App (1st) 152173, ¶ 24 (quoting 735 ILCS 5/2-702(a) (West 2012)). Additionally, our case law is clear that "[i]n determining whether a petitioner has show[n] by a preponderance of the evidence that he is innocent of the charged offenses, the trial court must consider *the materials attached to the petition*." (Emphasis added.) *Hood*, 2021 IL App (1st) 162964, ¶ 23 (citing *Fields*, 2011 IL App (1st) 100169, ¶ 19). We thus construe the plain language of the statute to mean that, in the context of a certificate of innocence

proceeding, the circuit court is to consider the petition itself and the "documentation demonstrating" the petitioner's innocence submitted along with the petition, regardless of whether it was previously admitted at the petitioner's underlying trial. 735 ILCS 5/2-702(a), (c) (West 2018).

¶ 56    In determining whether the circuit court's consideration of evidence that was not admitted at a petitioner's trial can be considered by the circuit court in a certificate of innocence proceeding, we find *Simon* instructive. In *Simon*, the pertinent issue before the reviewing court was whether the circuit court erroneously relied on inadmissible evidence, outside the evidentiary record, in an attempt to rebut facts pled in the petitioner's petition. *Simon*, 2017 IL App (1st) 152173, ¶ 23. There, the petitioner filed his certificate of innocence petition and attached eight exhibits "consisting mostly of excerpts from trial or grand jury testimony." *Id.* ¶ 25. And while the State intervened in the certificate of innocence proceeding, it did not file a response and indicated it had no position on the petition. *Id.* ¶ 16. In denying the petition, the circuit court relied on certain evidence—namely, the petitioner's statements made in allocution at the conclusion of his guilty plea hearing, some excerpts from the petitioner's *pro se* petition for postconviction relief, and a newspaper article containing the petitioner's statements made to a news reporter. *Id.* ¶ 22. While the circuit court had indicated that these documents were submitted by the petitioner, the petitioner argued on appeal that they were not and that the circuit court erred when it relied on this evidence. *Id.* ¶ 23. The reviewing court agreed and determined that these documents had not been submitted by the petitioner. *Id.* ¶ 25. In construing section 2-702, the reviewing court stated that "the court has wide discretion regarding the 'weight and admissibility of the evidence *submitted*.' " (Emphasis in original.) *Id.* ¶ 24 (quoting 735 ILCS 5/2-702(a) (West 2012)). The *Simon* court observed that the petitioner

"should not be deprived of his right to respond to the evidence used as the basis for finding that he caused his own conviction. The court, on its own, pointed to certain evidence and used it to deny petitioner's request without giving him a meaningful opportunity to object to it. Just as in any other adversarial proceedings, petitioner must have opportunity to object to the admissibility and the probative value of the evidence used to deny his claim." *Id.* ¶ 26.

¶ 57 A similar conclusion was reached in *Hood*, where the reviewing court found that in a "civil proceeding, as in all civil actions, where uncontested pleadings and exhibits are sufficient to state a claim and establish a basis for relief, a party can obtain relief based on the pleadings and attached exhibits." *Hood*, 2021 IL App (1st) 162964, ¶ 30.

¶ 58 Here, in contrast, petitioner was the one who "submitted" the search warrant affidavit by attaching it to his petition. See *Simon*, 2017 IL App (1st) 152173, ¶ 24; 735 ILCS 5/2-702(a) (West 2018). The State then filed a response, petitioner filed a reply, and a hearing was conducted. The circuit court then rendered a determination based on the petition, the documents attached to the petition (including the search warrant affidavit), and the State's evidence. Unlike *Simon*, the proceedings herein were adversarial in nature, and the circuit court did not go outside the record to consider evidence not submitted by petitioner or the State. See *Simon*, 2017 IL App (1st) 152173, ¶¶ 24-26. Furthermore, while it is arguable that the search warrant affidavit consists of hearsay, it was petitioner who introduced the affidavit in support of his petition. We observe that petitioner never made a request to withdraw the search warrant affidavit from the record, nor did he move for a ruling from the circuit court to find its contents inadmissible. See *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007) (a party's failure to obtain a ruling from the circuit court on its motion results in an abandonment of the motion

and "create[s] a procedural default of any issue related to that motion for the purpose[s] of appeal"); see also *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17 (observing that under the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error). Indeed, petitioner acknowledges as much when he argues on appeal that the evidence, "admissible or inadmissible," established by a preponderance that he was innocent.

¶ 59                                    Certificate of Innocence Petition

¶ 60     Having concluded that the search warrant affidavit was properly considered by the circuit court, we turn to the ultimate issue in this case—whether petitioner demonstrated, by a preponderance of the evidence, that he was innocent of possessing or constructively possessing the contraband (including the weapons) with an intent to deliver. The evidence presented during the hearing demonstrated that while there was no traditional evidence that petitioner formally resided in the apartment, such as mail or a lease, it strongly suggests that there was circumstantial evidence that he had significant connections to and exercised control of the apartment and thus possessed or constructively possessed the contraband. See *Fields*, 2011 IL App (1st) 100169, ¶ 19 (in determining whether a petitioner has established by a preponderance of the evidence that he is innocent of the charged offenses, the trial court must consider the materials attached to the petition).

¶ 61     First, as observed by the circuit court, the apartment was barricaded with a scissor gate and large padlock that could not be opened by police using typical methods. The rear door of the apartment was also barricaded but with two-by-fours. These security measures were extreme, and the fact the apartment was barricaded strongly implied that others were intentionally excluded from entering the apartment and that there was a need to secure items and individuals

within the apartment. We thus agree with the circuit court's assessment that the barricading of the apartment doors was circumstantial evidence of petitioner's knowledge that contraband was inside the apartment.

¶ 62    Second, despite the extreme attempt to exclude others from gaining entry to the apartment and secure its contents, petitioner's private and personal property was also located within. This personal property included two prescription bottles, a current passport, his current probation card, and two duffel bags of clothing that could only fit petitioner but not McDaniel. The fact petitioner's personal property was found inside suggests that petitioner had access to and had been inside the apartment. Indeed, one prescription bottle, in petitioner's name, contained current medication. Moreover, in his affidavit, petitioner did not deny that his personal effects were inside of the apartment, nor did he attempt to explain their presence inside the apartment. The presence of petitioner's personal property inside the apartment strongly suggests that petitioner had recently been inside. Importantly, petitioner's current passport was located inside the apartment. As a passport is a particularly private and personal item which is hard to replace and typically kept close at hand, the fact it was left inside the apartment establishes petitioner's familiarity with and access to the apartment. In addition, as noted by the court below, petitioner's probation card indicated he had an appointment the month prior to the search warrant being executed and another appointment scheduled days thereafter. The probation card thus demonstrates that petitioner was recently present inside the apartment. The totality of the evidence demonstrates that petitioner had significant ties and access to the apartment as well as its contents therein.

¶ 63    We further observe that it was petitioner's uncle who leased the apartment and that petitioner was discovered in the immediate vicinity of the apartment when the search warrant

was being executed.

¶ 64     Also of note is that multiple officers testified they did not find any items within the apartment that indicated McDaniel resided there. While there were photographs on the wall, Officer Bedoy testified that there was nothing in the bathroom which demonstrated McDaniel was a resident. While Cole testified that he leased the apartment to McDaniel, the way the apartment was barricaded, along with the extensive hidden compartment found within, indicates that this apartment could have been used, not as a traditional residence, but as a "trap house" or a place where contraband is stored. This theory could also explain why so few personal effects were discovered inside the apartment and also why McDaniel met his landlord outside of the apartment to pay his rent.

¶ 65     Moreover, the similarity between the hidden compartment in the hallway closet and one discovered in petitioner's pickup truck ties petitioner to knowledge of the hidden compartment and the contraband contained therein. Specifically, the evidence established that these two hidden compartments were constructed in a similar manner, using similar materials, and operated identically to one another. Indeed, they were both operated by the same mechanism that is used in an automobile's power window. Notably, petitioner's affidavit does not explain why two hidden compartments share a similar construction. Without such an explanation, when viewed together with the totality of his personal effects discovered within the apartment, it is more likely true than not true that petitioner had knowledge of the contraband contained within the hidden compartment. Additionally, the fact a similar hidden compartment was found in petitioner's pickup truck is strongly indicative of petitioner concealing and transporting contraband.

¶ 66     In addition, while it was not admitted into evidence at the bench trial, petitioner attached to his petition the search warrant affidavit in which Officer Gallas swore that a confidential

informant informed him that he purchased contraband from petitioner inside the apartment two days prior to the search warrant being executed and had purchased contraband other times from petitioner at that location. The affidavit's averments of drug sales by petitioner in the apartment is corroborated by the security measures, the hidden compartment containing contraband and weapons, and petitioner's presence outside of the apartment on the day the search warrant was executed. This evidence supports that petitioner had access to the contraband discovered within the apartment.

¶ 67    Viewing all of the evidence presented at the hearing as a whole, we cannot say that the circuit court abused its discretion when it found that petitioner failed to prove by a preponderance of the evidence that he was innocent of the charged offenses. See *Gomez*, 2021 IL App (1st) 192020, ¶ 56 (finding that while the evidence may have served to cast doubt on the State's case in proving the petitioner guilty beyond a reasonable doubt, the petitioner failed to prove that he was innocent by a preponderance of the evidence).

¶ 68    In reaching this determination, we have considered petitioner's argument that "the lower court is not free to ignore the uncontradicted and unrebutted testimony of a petitioner" as exhibited in his affidavit. We observe, as this court did in *People v. Washington*, 2020 IL App (1st) 163024, ¶ 26, that the circuit court was entitled "to give whatever weight it deemed appropriate to the testimony at the hearing and to the affidavits, stipulations and other exhibits offered in support of the petition." Petitioner averred in his affidavit that he "never lived" at 6809 South Laflin Street, did not have a key to the apartment, and "did not know [McDaniel] had items hidden in a hidden compartment in his hallway closet." Indeed, the address petitioner provided as his home address was different from the address on his vehicle registration and thus impeaches his affidavit. He further averred that he did not own the items that were found in the

hidden compartment. But petitioner also averred that he "would visit my uncle at his home from time to time." Our examination of the record reveals that the circuit court did not ignore petitioner's affidavit, but considered it and weighed it in light of the other evidence as is allowed within the court's discretion. See *id.*

¶ 69     In sum, we find that the circuit court did not abuse its discretion when it found that petitioner failed to demonstrate by a preponderance of the evidence that he was innocent of the offenses as charged.

¶ 70                              CONCLUSION

¶ 71     For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

¶ 72     Affirmed.

---

**No. 1-19-2184**

---

| | |
|---|---|
| **Cite as:** | *People v. Terrell*, 2022 IL App (1st) 192184 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-CR-3697; the Hon. LeRoy K. Martin Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jennifer L. Blagg, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham and Paul E. Wojcicki, Assistant State's Attorneys, of counsel, and Samuel J. Cundari, law student), for the People. |

---