2021 IL App (1st) 162964

FIRST DIVISION
March 22, 2021

No. 1-16-2964

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 93 CR 14676 |
| | ) | |
| TYRONE HOOD, | ) | The Honorable |
| | ) | Dominica Stephenson, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE PIERCE delivered the judgment of the court, with opinion.
Presiding Justice Walker and Justice Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner, Tyrone Hood, appeals from the denial of his petition for a certificate of innocence filed pursuant to section 2-702 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2016)). Petitioner argues that the trial court erred in denying his petition for a certificate of innocence where he has satisfied the legal requirements. For the following reasons, we reverse the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3        Hood and co-defendant Wayne Washington[1] were convicted of the May 1993 armed robbery and murder of college basketball star Marshall Morgan, Jr. Hood was convicted following a bench trial and was sentenced to 75 years' imprisonment. A lengthy discussion of the evidence adduced at Hood's trial can be found in *People v. Hood*, No. 1-97-0342 (July 8, 1999) (unpublished order pursuant to Supreme Court Rule 23). After Hood was convicted and sentenced, Washington entered a plea of guilty in exchange for a 25-year sentence.

¶ 4        Hood fought his conviction through a series of appeals and postconviction petitions. After a 2014 investigative article in *The New Yorker*, then Governor Quinn commuted Hood's sentence. The January 12, 2015, commutation order indicated that Governor Quinn was granting "commutation of sentence to time considered served leaving the mandatory supervised release period in effect."

¶ 5        Thereafter, on February 9, 2015, the State, on its own motion, moved to vacate Hood's and Washington's convictions, and grant them a new trial. The State then *nolle prosequi* the charges against both Hood and Washington pursuant to section 2-1401 of the Code. 735 ILCS 5/2-1401 (West 2014).

¶ 6        Subsequently, Hood promptly filed a petition for a certificate of innocence in the circuit court.

¶ 7                                    A. Hood's Petition

¶ 8        In his petition, Hood alleged he met the standard for a certificate of innocence as outlined in section 2-702(g) of the Code. Hood explained that he had nothing to do with Marshall's death

---

[1]Hood's and Washington's (appeal no. 1-16-3024) cases were originally consolidated in this court upon the parties' request. We have vacated that consolidation and will consider each petitioner's case separately.

and had never even met Marshall. Hood stated that Marshall's estranged father, Morgan Sr., had killed Marshall. Morgan Sr. had suddenly appeared back in Marshall's life and was one of the last people to see Marshall alive. Although Morgan Sr., was in significant debt and his house was in foreclosure, he had taken a $50,000 life insurance policy out on Marshall, his healthy 20-year-old, college athlete son. Within months of his insurance application, Marshall was shot to death.

¶ 9    Hood also alleged that Morgan Sr. had previously taken out a life insurance policy on a former girlfriend, who was also murdered and found in the same manner as Marshall—wedged between the front and back seats of an abandoned car. Morgan Sr. also confessed to murdering another girlfriend in 2001 by shooting her to death. He shoved her body into the trunk of a car. Hood alleged that Morgan Sr. had an "idiosyncratic and peculiar pattern of killing loved ones over money."

¶ 10    Hood also outlined several other reasons why the evidence did not support his conviction. Hood stated that his alleged statements to police were fabricated by the police. In addition, although his fingerprints were found on some trash recovered from inside the car where Marshall was found, there were also other fingerprints and other identifying information found related to a host of individuals.

¶ 11    Hood alleged that the evidence used to convict him was tainted by the coercive practices used by certain named police detectives. The State's witnesses, Jody and Michael Rogers, allegedly told police that they heard Hood ask about a gun and state that he wanted to do a "stang." Prior to Hood's trial, Jody recanted and explained that his statements to police were untrue and that Hood was innocent. Jody stated he was told by police that he was not going to go home "until he told the police what they wanted to hear." Jody also stated that he suffered physical abuse and other threats. Michael also recanted his statements to police and stated that he initially implicated

3

Hood because the police showed him papers with his name, Jody's name and Hood's name and they said that Michael was involved in the murder and he was afraid. However, at trial, the State offered Jody a deal on unrelated charges he was facing if he would agree to withdraw his earlier recantation, which he did, and testified against Hood at trial. Michael testified at trial against Hood after the State paid him $1000. Finally, Hood pleaded that certain detectives had been identified as engaging in patterns of coercive conduct in unrelated investigations.

¶ 12                    C. Hood's Testimonial Evidence in Support of Petition

¶ 13    Hood requested a hearing. The State did not participate in the hearing. Hood, the only witness, testified that he served 22 years for the murder of Marshall Morgan, Jr., a murder he did not commit. He testified he did not know the victim and had never met him. He knew Washington from the neighborhood, but they were not friends.

¶ 14    The police stopped him and told him they wanted to ask him questions about a murder. He was taken to the police station, handcuffed to the wall, and was questioned about Marshall's murder. Hood denied knowing anything about it. Hood was "physically abused and verbally abused, kicked, choked, [and] punched." He was taken to another police station at 51st and Wentworth. He was in custody two or three days. Police told him that his prints were found close to the crime scene. He was eventually released.

¶ 15    Several days later, he was in a local convenience store when police arrived, handcuffed him and put him in a car. Washington was also in the store and was put in the same car a few minutes later. The police took him and Washington to the police station where they stayed for several hours. Hood endured "a little physical abuse." He was later taken to 51st and Wentworth and was charged with murder.

¶ 16    Hood denied ever seeing or being inside of the car that Marshall's body was found in. He testified that he never confessed to Marshall's murder.

¶ 17    No other evidence was offered. After a full hearing, the circuit court denied Hood's petition for a certificate of innocence. Hood timely filed his appeal.

¶ 18                                    II. ANALYSIS

¶ 19    We consider this matter on appellant's briefs only. The State did not participate in the proceedings in the circuit court and has not participated in this appeal. Thus, we can safely characterize this as an uncontested matter.

¶ 20    Section 2-702(b) of the Code provides that

>        "[a]ny person convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit may, under the conditions hereinafter provided, file a petition for certificate of innocence in the circuit court of the county in which the person was convicted. The petition shall request a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(b) (West 2016).

¶ 21    To obtain a certificate of innocence under section 2-702(g) of the Code, a petitioner must prove by a preponderance of the evidence that:

>        "(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;
>
>        (2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found

not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; ***

(3) the petitioner is innocent of the offenses charged in the indictment or information ***; and

(4) the petitioner did not voluntarily cause or bring about his or her conviction."

735 ILCS 5/2-702(g) (West 2016). See also *People v. Fields*, 2011 IL App (1st) 100169, ¶ 13.

¶ 22    "If the court finds that the petitioner is entitled to a judgment, it shall enter a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(h) (West 2008). A person who secures a certificate of innocence may file a petition in the state's Court of Claims seeking compensation. *Rodriguez v. Cook County, Illinois*, 664 F. 3d 627, 630 (7th Cir. 2011) (citing 735 ILCS 5/2-702(a) (West 2008)); see also *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993) ("[a] certificate of innocence serves no purpose other than to permit its bearer to sue the government for damages").

¶ 23    In determining whether a petitioner has showed by a preponderance of the evidence that he is innocent of the charged offenses, the trial court must consider the materials attached to the petition. *Fields*, 2011 IL App (1st) 100169, ¶ 19. In a certificate of innocence hearing, the court may take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions which resulted in the alleged wrongful incarceration, if the petitioner was either represented by counsel at such prior proceedings or the right to counsel was knowingly waived. 735 ILCS 5/2-702(f) (West 2016). Whether a petitioner is entitled to a certificate of innocence is generally a question left to the sound discretion of the court. *Rudy v. People*, 2013 IL App 1st 113449, ¶ 11. "An abuse of discretion occurs only where the trial court's decision is

arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. Rivera*, 2013 IL 112467, ¶ 37. However, "[t]he interpretation of a statute is a question of law that is reviewed *de novo*." *Fields*, 2011 IL App (1st) 100169, ¶ 18.

¶ 24    The circuit court denied Hood's petition for a certificate of innocence because it found that he had failed to meet the third prong of section 2-702(g)(3): he failed to establish that he is innocent of the offenses charged that have now been dismissed and judgment vacated. Hood now argues that the trial court required him to satisfy a standard of innocence that is dramatically higher than what is required to obtain a certificate of innocence. We agree with Hood that the evidence submitted at Hood's hearing on his petition for a certificate of innocence proved by a preponderance of the evidence that he was entitled to the relief requested.

¶ 25    Hood takes issue with the trial court's use of the term "actual innocence" and claims the circuit court used and applied this term in the manner used and applied in postconviction proceedings. 725 ILCS 5/122-1 (West 2016). He claims that proving actual innocence is more difficult and exacting than proving simple innocence because in order to succeed on a claim of actual innocence in a postconviction petition, a defendant must present "new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial." *People v. Coleman*, 2013 IL 113307, ¶ 94. He argues that the legislature explicitly set a different standard for a certificate of innocence as evidenced by the fact that it did not use the term "actual innocence." Hood maintains that use of the word "innocent" in section 2-702(g)(3), requires only that a petitioner establish by a preponderance of the evidence that "he or she did not commit the crime." Section 2-702(b) provides that "Any person convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit may" file for a certificate of innocence. See 735 ILCS 5/2-702(b) (West 2016). As previously discussed, "[t]he

interpretation of a statute is a question of law that is reviewed *de novo*." *Fields*, 2011 IL App (1st) 100169, ¶ 18.

¶ 26 The Act is specific: only a "person convicted and subsequently imprisoned for one or more felonies by the State of Illinois *which he or she did not commit*" may file for a certificate of innocence. (Emphasis added.) 735 ILCS 5/2-702(b) (West 2016). While section 2-702(g)(3) requires the petitioner to establish he is "innocent of the offenses charged in the indictment or information," Illinois courts have found that this requirement is satisfied when a court finds someone "actually innocent," distinguishing "between a finding of not guilty at retrial and actual innocence of the charged offenses." *Fields*, 2011 IL App (1st) 110169, ¶ 19. See also *Rudy*, 2013 IL App (1st) 113449, ¶ 14 (noting the legislature's intent to distinguish between a finding of not guilty at retrial and actual innocence of the charges); *People v. Pollock*, 2014 IL App (3d) 120773 (section 2-702 contemplates the differences between "actual innocence and a finding by a court of review that no rational jury could find beyond a reasonable doubt that the State proved all elements of the crimes charged."); *People v. McClinton*, 2018 IL App (3d) 160648 (the legislative intent of the statute is to "distinguish between a finding of not guilty at retrial and actual innocence of the charged offenses"). This view is in line with the interpretation of a similar federal statute, under which the court

> "must consider whether the petitioner is truly innocent—that is, whether he committed the acts charged and, if so, whether those acts constituted a criminal offense [citations]—but the court makes that determination independent of the outcome of the trial or appeal, taking into account not only whether the petitioner was innocent but also whether he may be deemed responsible for his own prosecution." *Betts*, 10 F.3d at 1283 (citing 28 U.S.C. § 2513(a)(2) (1988)).

¶ 27 Hood's interpretation of the section 2-702(g)(3) term "innocent" means that "he or she did not commit" the charged crime and is consistent with the term "actual innocence" used by both the circuit court in this case and by Illinois courts in determining whether a defendant has satisfied section 2-703(g)(3). We frankly find the debate over whether the section 2-702 petitioner must prove "actual innocence" or "simple innocence" to be a semantic distraction and not a factor in our disposition of this appeal. Although the circuit court did mention the postconviction standard of actual innocence, the court clearly indicated that it was "based on a different standard." We are confident the circuit court required Hood to prove by a preponderance of the evidence that he did not commit the robbery or murder of Marshall. To be clear, the Act requires the petitioner to prove by a preponderance of the evidence that he or she did not commit the charged offense or offenses and the term "actual innocence," as used in postconviction proceedings to warrant postconviction relief, has no applicability in the context of a certificate of innocence proceeding.

¶ 28 Here, there is no question that Hood was charged, convicted, and served a sentence for crimes that have since been dismissed and the underlying judgment has been vacated. The remaining element Hood was required to prove by a preponderance of the evidence, and central to our decision, was that he did not commit the robbery or murder of Marshall Morgan, Jr. The fact that Governor Quinn commuted his sentence and the fact that the State subsequently agreed to vacate his conviction and dismiss the charges, while sufficient to establish the first and second elements under sections 2-702(g)(1), (2), does not tend to prove that petitioner is innocent (he did not commit the charged offenses) under section 2-702(g)(3), just as a finding of not guilty does not prove by a preponderance of the evidence that the defendant did not commit the offense because a finding of not guilty represents an acknowledgment that the evidence did not meet the high burden of proof of guilt beyond a reasonable doubt.

¶ 29    As discussed above, the standard of review of this civil proceeding is whether the circuit court abused its discretion by denying Hood's petition, and an abuse of discretion occurs where the circuit court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. Here, it was Hood's burden to show that it was more probably true than not true that he was innocent of the crimes charged. The circuit court found that Hood did not meet his burden after reviewing his petition, Hood's testimony at the hearing, and after reviewing portions of the underlying criminal proceedings that were not placed in evidence by Hood. We find that the circuit court erred in denying Hood's petition because it ignored Hood's uncontroverted testimony at the certificate of innocence hearing that he did not commit the underlying crimes, it made credibility findings related to Michael's and Jody's affidavits attached to the petition that recanted their trial testimony, and it clearly disregarded the complete absence of any evidence submitted to contradict or rebut Hood's testimony regarding his innocence.

¶ 30    A certificate of innocence proceeding requires proof of certain elements by a preponderance of the evidence. Other than allowing for judicial notice of earlier trial testimony, this is structurally an uncomplicated civil proceeding. We find that in this civil proceeding, as in all civil actions, where uncontested pleadings and exhibits are sufficient to state a claim and establish a basis for relief, a party can obtain relief based on the pleadings and attached exhibits. This is typically done through summary judgment proceedings. "Where a plaintiff has moved for summary judgment, the materials relied upon must establish the validity of the plaintiff's factual position on all the contested elements of the cause of action." *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 7. "Once the movant has met its initial burden of production, the burden shifts to the nonmovant." *Id.* ¶ 11. It is then incumbent on the nonmoving party to demonstrate some factual basis that would arguably entitle it to a judgment

10

under applicable law. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000). If a question of fact exists, then the motion for summary judgment is denied and the matter proceeds to a hearing or trial. Here, the only party before the court was the petitioner, Hood. Both the Attorney General and the State's Attorney refused to intervene in the proceedings. Because Hood was the only party and he pleaded the elements of his claim, had he filed for summary judgment he would have been successful because there was no evidence before the circuit court to rebut his petition.

¶ 31    We have previously observed that section 2-702 "indicates that the proceedings are adversarial in nature" but it "does not contain well-defined procedural instructions on how to proceed in a case where the State, although it intervenes, does not object to the proceedings and does not present any evidence to rebut a petitioner's claim for a certificate of innocence." *People v. Simon*, 2017 IL App (1st) 152173, ¶ 24. And, clearly, the statute does not contain any procedural instruction where, as here, the State does not intervene and does not offer any evidence relevant to the petitioner's burden of proof. In this circumstance, the petitioner need only establish a *prima facie* case for relief because there is no contrary evidence to rebut the well-pleaded petition.

¶ 32    Here, we find it was error for the circuit court to rely on prior sworn testimony at Hood's underlying criminal trial in reaching its decision because that testimony was not offered or placed in evidence. It appears the circuit court relied on section 2-702(f) to take judicial notice of prior sworn testimony or other evidence introduced at the earlier criminal trial. We find that this provision relates to foundational issues associated with the admissibility of prior sworn testimony and it is not authority for the circuit court to embark on its own fact-finding mission. In *Simon* we reversed the denial of a certificate of innocence where the circuit court "relied on inadmissible evidence, outside the evidentiary record" thereby depriving petitioner of an opportunity to counter

the evidence, object to it being admitted, or cross-examine the witnesses. *Id.* ¶ 25. Where, as here, there is no adverse party, the circuit court, as trier of fact, does not assume the additional role of an advocate and section 2-702(f) does not grant the court authority to independently research the record and history of the original criminal proceedings to inform and influence its judgment in the certificate of innocence proceeding. Otherwise, allowing the circuit court to do its own independent research creates an inherent tension and conflict with the circuit court's role as an independent, disinterested fact finder. Of course, the circuit court retains its authority to weigh the evidence and judge the credibility of the witnesses, but this authority is confined to the evidence submitted by the parties. As we observed in *Simon*, where the court considers evidence not submitted by the petitioner or the State, the "petitioner should not be deprived of his right to respond to the evidence used as the basis for finding that he caused his own conviction" or deprive the petitioner of "a meaningful opportunity to object to it." *Id.* ¶ 26. This observation applies equally to proving the element of innocence.

¶ 33    Here, Hood was required to file a verified petition alleging the four elements necessary for the entry of a certificate of innocence by the court. 735 ILCS 5/2-702(h) (West 2016). Attached to his petition were affidavits from two witnesses, Jody and Michael Rogers, that recanted their trial testimony. Also attached to the petition were, generally, portions of earlier trial testimony submitted to provide context for petitioner's argument that certain trial testimony should be discounted; purported expert opinions on the validity of certain testimony; deposition transcripts from unrelated police misconduct cases to support petitioner's allegations of police coercion of petitioner and other witnesses; media articles and criminal records dealing with the theory that Morgan, Sr. killed Marshall; and other miscellaneous documents that, based on our review, do not tend to create any inference that Hood did or did not rob or kill Marshall.

¶ 34     The State chose not to oppose Hood's petition in any manner. The State told the court that it did not oppose Hood's petition and pointedly provided no reason for this position. Again, had Hood moved for summary judgment he would have been successful because there was nothing in his verified petition and attached exhibits to rebut the facts in his well-pleaded petition that he was innocent of the now dismissed charges and vacated convictions. Rather than moving for summary judgment, petitioner requested a hearing. At the evidentiary hearing, Hood testified that he did not kill or rob Marshall. His testimony was not challenged in any manner. No contrary evidence was offered into evidence, and clearly his testimony was not impeached, contradicted, or inherently improbable. In sum, at the conclusion of the hearing the only evidence before the court was Hood's testimony and his verified petition with attached affidavits and exhibits, all of which stood unrebutted.

¶ 35     The circuit court found that Hood lacked credibility because he initially told the police versions of his whereabouts on May 8 and May 9, 1993, that differed from his testimony at the hearing. However, the circuit court could only reach this conclusion if it had obtained Hood's earlier statements to the police from an external source because nothing offered by Hood in this proceeding dealt with any alleged statement he may or may not have made to the investigators. For example, in affirming Hood's convictions on direct appeal (*People v. Hood*, No. 1-97-0342 (July 8, 1999) (unpublished order under Illinois Supreme Court Rule 23)) we discussed these versions in our review of Hood's motion to quash his arrest for lack of probable cause and our summary of police trial testimony relating to their questioning of Hood during the course of their investigation. In any case, while Hood may have given various differing statements as to his whereabouts during the days surrounding Marshall's disappearance, Hood never made any inculpatory statements to investigators that directly or indirectly implicated him in the robbery or

murder, he did not testify in his trial and he clearly did not submit any evidence in this regard in support of his petition. As such, any purported evidence gleaned from the original criminal trial testimony does not and did not reasonably undermine any aspect of Hood's testimony in support of this petition that he did not commit the charged offenses. And, importantly, Hood was never given an opportunity to respond to whatever the circuit court considered in this regard or the import the circuit court gave the evidence produced during the criminal proceedings.

¶ 36    The circuit court also found that Hood did not present any evidence to support his theory of abuse by the detectives other than to cite instances where the detectives asserted their fifth amendment rights in unrelated civil misconduct cases. While it is arguable whether the circuit court should have drawn an adverse inference from the officers' asserting their constitutional rights (*People v. Whirl*, 2015 IL App (1st) 111483, ¶ 107), we need not address this question because Hood did not confess to these crimes. Given the posture of these proceedings, the only element Hood had to prove by a preponderance of the evidence was that he did not kill Morgan, Jr. and he did not introduce relevant evidence of police misconduct that tended to prove or disprove this element. There was no competent testimonial or documentary evidence before the circuit court involving police misconduct that was relevant to a certificate of innocence proceeding and the issue of whether Hood committed the crimes charged.

¶ 37    Also considered by the circuit court were the affidavits from the Rogers brothers recanting their trial testimony that were attached to the petition. Our decision on direct appeal indicates that both brothers gave pretrial statements used in Hood's prosecution that they recanted shortly before trial. However, both brothers later testified at trial that their recantations were false. In other words, the Rogers brothers' affidavits attached to the certificate of innocence petition consisted of recantations of recantations. While the circuit court did not find any corroborating evidence to

substantiate the statements that they were physically abused or coerced into giving false trial testimony, Jody's and Michael's affidavits contained unrebutted evidence that their testimony—and their previous recantations—resulted from deals with or favors from the State. Michael's and Jody's affidavits contained the unrebutted assertions that Jody agreed to recant his previous recantation of his statement to police after the State offered him a deal on pending unrelated charges, and that Michael received $1000 worth of food and money from the State on the days he testified against Hood.

¶ 38    Hood argued at the hearing that these affidavits were evidence that Michael's and Jody's trial testimony was the result of police coercion. However, the court found that because Hood did not present them as witnesses, the court was unable to assess the credibility of their recantations and discounted their affidavits. But the circuit court found that, because the trial court in the criminal proceeding found the brothers credible, it would accept that finding and consider their testimony at the criminal trial credible. In addition, the court found the allegations in Jody's affidavit to be vague, nonspecific, and unsubstantiated by corroborating evidence of physical abuse or coercion.

¶ 39    We find that the circuit court's inability to assess the credibility of the Rogers brothers cuts both ways. There is an inconsistency in a finding their trial testimony credible because it was so declared in the criminal trial by a different judge, yet, at the same time, rejecting the unopposed affidavits merely because the affiants did not testify at the certificate of innocence hearing. As stated earlier, section 2-702(f) allows judicial notice of testimony given in the underlying criminal proceeding without the need to establish a foundation for admissibility. The legislature did not provide that the judicially noticed testimony could be used substantively. Given the lack of procedural guidance from the legislature, it is understandable that the circuit court relied on section

2-702(f) to consider testimony from the original, vacated criminal prosecution but it was error to both consider the earlier testimony where it was not offered by any party and to make any substantive credibility assessment of the earlier testimony. However, the failure to appear and testify at the hearing is not a basis to entirely reject the uncontested affidavits attached to the petition. At best, the uncontested Rogers' affidavits attached to the petition were consistent with their recantations before the criminal trial and, at worst, inconsistent with their trial testimony. It is apparent from our review of these affidavits that they do not tend to prove or disprove an element that Hood was required to prove: that he did not commit the underlying crimes. Thus, given the posture of the evidence Hood relied on at the hearing to prove he did not commit the crimes charged, the Rogers' affidavits were of no value.

¶ 40    The circuit court similarly found that Hood's claim that Emmanuel Bob's testimony should be discredited based on attendant circumstances to be meritless because it is entirely speculative. We need not comment on this finding because, at its best, even if this trial testimony was properly considered at this hearing, it merely placed Hood in Morgan, Jr.'s automobile near the time he went missing and does not sufficiently contradict or rebut Hood's hearing testimony that he did not rob or kill Morgan, Jr. The circuit court also found Hood's argument that the trash containing his fingerprints was placed in the vehicle by Morgan Sr. to be speculative and unsubstantiated. We agree. However, the trial evidence that Hood's fingerprints were found on garbage recovered from Morgan's car, on its own and in conjunction with other admissible substantive evidence, does not contradict or refute Hood's hearing testimony that he did not commit the crimes charged.

¶ 41    Finally, the court found that Hood's theory that Morgan Sr. alone killed his son to be entirely speculative and conclusory. Again, we agree with the circuit court. Although Hood claimed similarities between Marshall's murder and the murders of Morgan Sr.'s former

girlfriends, Hood provided no credible evidence that tended to show that Morgan Sr. was responsible for Marshall's death. Magazine articles, while perhaps interesting and entertaining, are not substantive evidence. In our view, the issue in this proceeding was not who killed Morgan, Jr. Rather, the issue was simply whether Hood proved by a preponderance of the evidence that he did not kill and rob Morgan, Jr.

¶ 42     In summary, Hood's petition and attached exhibits met the pleading requirements to state a claim for the issuance of a certificate of innocence. 725 ILCS 5/122-1 (West 2016). When the State and the Illinois Attorney General refused to intervene, there was no interested party that submitted any evidence that conflicted with Hood's testimony. By requesting a hearing and relying on the exhibits we have discussed to support his petition, Hood injected issues that were not relevant to the proving the elements required in these proceedings. On the issue of innocence, Hood testified that he did not kill or rob Morgan, Jr., and established a *prima facie* case that he was entitled to a certificate of innocence. With no contrary evidence presented at the hearing, and with the State refusing to participate, the circuit court was not free to disregard Hood's testimony. *Baker*, 88 Ill. 2d at 85.

¶ 43     In finding that Hood failed to meet his burden of showing by a preponderance of the evidence that he was innocent of the offenses charged, the circuit court erred in failing to limit its consideration to the testimony, pleadings, and exhibits filed in this section 2-702 proceeding. Hood gave the only testimony in support of the petition. No conflicting evidence was offered to rebut Hood's testimony and clearly there was no evidence introduced at the hearing that would tend to prove Hood robbed and killed Marshall, Jr. Based on the pleadings, attached exhibits, and the uncontradicted and unrebutted testimony of petitioner, the preponderance of the evidence established that petitioner more likely than not did not commit the offenses underlying his petition.

We therefore reverse the circuit court's denial of Hood's petition for a certificate of innocence and remand to the circuit court for the issuance of a certificate of innocence and for such further proceedings authorized under the Act.

¶ 44                                   III. CONCLUSION

¶ 45    In light of the foregoing, we reverse the judgment of the circuit court denying Hood's petition for a certificate of innocence and remand for the issuance of a certificate of innocence and for further proceedings provided for under the Act.

¶ 46    Reversed and remanded.

**No. 1-16-2964**

| | |
|---|---|
| **Cite as:** | *People v. Hood*, 2021 IL App (1st) 162964 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 93-CR-14676; the Hon. Domenica Stephenson, presiding. |
| **Attorneys for Appellant:** | Steven Greenberg, of Greenberg Trial Lawyers, of Chicago, for appellant. |