2024 IL App (5th) 230070-U

NO. 5-23-0070

NOTICE
Decision filed 10/02/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-CF-1422 |
| | ) | |
| SHANE A. KITTERMAN, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court correctly denied the defendant's petition for relief from judgment, which challenged the court's prior order denying his petition for a certificate of innocence, where the alleged error was not apparent on the face of the record and the ruling was not legally inconsistent with undisputed facts. We therefore affirm the court's judgment.

¶ 2    The defendant, Shane A. Kitterman, was convicted in 2014 of one count of unlawful failure to register as a sex offender under the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2012)). See *id.* §§ 3(a), 10(a). This court subsequently overturned his conviction, holding that the State failed to present evidence proving that he was required to register at the relevant time, which is an element of the offense. *People v. Kitterman*, No. 5-15-0373 (2021), ¶¶ 12-13 (unpublished summary order under Illinois Supreme Court Rule 23(c)(2)). The defendant filed a petition for a certificate of innocence (735 ILCS 5/2-702 (West 2020)), which the court

1

denied. The defendant did not file a timely appeal of that ruling. However, he subsequently filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (*id.* § 2-1401). He now appeals a trial court order denying that petition, arguing that the court should have vacated its previous order denying his petition for a certificate of innocence because of errors of law apparent on the face of the record. More specifically, he contends that the court erred in finding that he had a duty to register at the relevant time based on a signed SORA registration form the State offered into evidence. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4      The defendant's duty to register as a sex offender arose from a 1996 guilty plea. At issue is the duration of his duty to register. Under SORA, a sex offender is required to register in person with local police within three days after a judgment of conviction sentencing him is entered. 730 ILCS 150/3(c)(3) (West 2012). If the offender is unable to comply with this requirement because he is incarcerated or confined to an institution, the duty to register instead begins within three days after the offender's release. *Id.* § 3(c)(4). The offender must provide police with accurate information, including his current address and current place of employment and/or school. *Id.* § 3(a). A person subject to this requirement must reregister within three days after establishing a new residence or temporary domicile or beginning school or work at a new place of employment. *Id.* § 3(b). During periods when the offender is homeless, he "must report weekly, in person" to provide local police with "all the locations where the person has stayed during the past 7 days." *Id.* § 3(a).

¶ 5      The duty to comply with these requirements continues for a period of 10 years. *Id.* § 7. However, there are circumstances that can extend this period. If the offender is reincarcerated or confined due to a parole violation or other circumstances relating to the original conviction, the

2

duty to register extends until 10 years after the offender's final discharge, release, or parole. *Id.* Likewise, if an offender fails to comply with the registration requirements of SORA, the Illinois State Police "*shall* extend [the registration period] for 10 years" after the offender's failure to comply. (Emphasis added.) *Id.* In addition, if the offender is reincarcerated or confined for reasons that are not related to the original conviction, the 10-year period of his original duty to register is tolled until he is released, discharged, or paroled. *Id.*

¶ 6     The defendant in this case was originally charged with a sex offense in 1995 and sentenced to four years of probation pursuant to a negotiated plea agreement in January 1996. Thus, as he correctly points out, he was initially required to register under SORA from January 1996 until January 2006. The charges at issue in this appeal stem from allegations that he failed to comply with the requirements in SORA in September and October of 2014. The question is whether his duty to register was extended so that he was still subject to the requirements of SORA at that time.

¶ 7     We note that before both the trial court and this court, the defendant has made various allegations about his 1996 guilty plea and a subsequent guilty plea in 2005 and what impact those plea agreements had on the duration of his obligation to register pursuant to SORA. He did not, however, offer any documentation in support of these allegations. Nevertheless, this court may take judicial notice of court records from other proceedings. *Bush v. J&J Transmissions, Inc.*, 2017 IL App (3d) 160254, ¶ 11. We may also take judicial notice of the information on the website of the Illinois Department of Corrections (IDOC). *People v. Goods*, 2016 IL App (1st) 140511, ¶ 56. For purposes of providing context, we will rely on these sources to set forth the pertinent information affecting the defendant's duty to register under SORA.

¶ 8     In St. Clair County case No. 95-CF-750, the defendant pled guilty to one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1) (West 1994)). Pursuant to a plea

3

agreement, he was sentenced to four years of probation, the first year of which was to be "intensive probation." In March 1997, the court revoked the defendant's probation and sentenced him to four years in prison. He was released in February 1998.

¶ 9    In July 2005, the defendant pled guilty in a plea agreement involving multiple charges in five pending criminal cases in St. Clair County. He was charged in case No. 04-CF-308 with three counts of theft and one count of obstructing justice. In case No. 05-CF-376, he was charged with one count of failure to report a change of address as required under SORA. Case No 05-CF-993 involved a single count of obstructing justice. The defendant also faced two misdemeanor charges of domestic battery in cases 05-CM-2160 and 05-CM-2161. Pursuant to the plea agreement, the defendant pled guilty to both charges of obstructing justice, the charge of failure to report a change of address pursuant to SORA, and both charges of domestic battery. In exchange for his plea, the State dropped the three theft charges along with several pending traffic tickets and waived any fines that might be imposed for the two misdemeanor domestic battery charges. The agreement called for consecutive sentences of one year on each of the three felony charges to which the defendant pled guilty. IDOC's website indicates that the defendant was taken into custody on those charges on June 13, 2005.

¶ 10    In October 2014, the State filed the information at issue in this case, charging the defendant with two counts of unlawfully failing to register under SORA. In count I, the State alleged that the defendant failed to provide accurate information to police concerning his residence in September and October of 2014, and in count II, the State alleged that he failed to provide accurate information concerning his location while claiming to be homeless during the same period. The State further alleged that the defendant was previously convicted of failing to comply with the requirements of SORA in 2005. See 730 ILCS 150/10(a) (West 2012) (providing that any violation

4

of SORA's requirements is a Class 3 felony, but that any second or subsequent violation is a Class 2 felony).

¶ 11    Prior to trial on these charges, the State filed a motion *in limine* asking the court to bar the defendant from arguing that he no longer had a duty to register. The State contended that his duty to register was a question of law for the trial court to determine. The court granted the motion.

¶ 12    At trial, the State introduced into evidence a copy of the judgment of conviction entered pursuant to the defendant's January 1996 guilty plea. However, the State did not present evidence concerning the defendant's incarceration after his probation was revoked or any subsequent convictions. The court instructed the jury that the State was required to prove beyond a reasonable doubt that (1) the defendant was a sex offender as defined under SORA and (2) he knowingly provided material information he was required by law to provide knowing it to be false. Jurors were not told that the State also had to prove beyond a reasonable doubt that the defendant was subject to the registration requirements of SORA at the time of the alleged offense. The defendant was convicted on one count and acquitted on the other count. He was subsequently sentenced to three years in prison.

¶ 13    The defendant appealed his conviction, arguing that the State was required to prove beyond a reasonable doubt that the registration requirements of SORA applied to him at the time of the offense. He contended that, because the State failed to provide evidence on this question, it failed to meet its burden of proving him guilty. *Kitterman*, No. 5-15-0373, ¶ 8. The State conceded as much (*id.*) and this court agreed (*id.* ¶ 12). We noted that the State had not presented any evidence at trial to demonstrate that the defendant was still required to register at the pertinent time. We thus held that his conviction for failing to provide police with accurate information concerning his

5

residence could not stand. *Id.* We issued our decision reversing the defendant's conviction on February 18, 2021.

¶ 14    In April 2020, while the appeal from his conviction was still pending, the defendant filed a petition for a certificate of innocence (see 735 ILCS 5/2-702 (West 2020)). He alleged that the plea agreement he entered into in January 1996 included a promise from the State that he would be subject to the requirements of the Child Sex Offender Act, a predecessor of SORA.[1] The defendant further alleged that his duty to register under SORA expired in January 2006 and that he was prevented from proving this at his trial. In support of his petition, the defendant attached a copy of the SORA registration form he signed in January 1996, showing that, as of that time, his obligation to register would expire in January 2006, and a copy of this court's decision in another appeal involving this defendant, *People v. Kitterman*, 2018 IL App (5th) 140415-U.

¶ 15    That case involved a November 2012 charge of violating SORA by failing to provide police with accurate information concerning the defendant's residence. *Id.* ¶ 6. There, as here, the State did not present evidence during the defendant's trial to establish his ongoing duty to comply with SORA at the time of the charged offense. *Id.* ¶ 24. As in this case, this court reversed the defendant's conviction on this basis. *Id.* ¶¶ 24, 26.

---

[1]The Child Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1994)) was amended to include, among other things, a change in its title to the Sex Offender Registration Act, effective January 1, 1996. Pub. Act 89-8, art. 20, § 20 (eff. Jan. 1, 1996). In pertinent part, the amendment added language to section 3(c)(1) providing that "any person registered under the Habitual Child Sex Offender Registration Act or the Child Sex Offender Registration Act prior to January 1, 1996, shall be deemed initially registered as of January 1, 1996; however, this shall not be construed to extend the duration of registration set forth in section 7." *Id.* Section 7 was amended three years later to add the following pertinent language: "The Director of State Police *** shall extend for 10 years the registration period of any sex offender who fails to comply with the provisions of" SORA. Pub. Act 91-48, § 5 (eff. July 1, 1999). Although the transcript of the 1996 plea hearing does not include any references to a promise that the provisions of the earlier versions of the Child Sex Offender Registration Act or Habitual Child Sex Offender Act would apply to the defendant in exchange for his plea, it is likely that plea negotiations took place prior to the effective date of the 1996 amendments, which was only nine days before the plea was entered.

¶ 16    This case was set for a hearing on February 19, 2021. As noted previously, this court entered a summary order overturning the defendant's conviction on February 18, the day before the scheduled hearing. After the hearing, the court denied the defendant's petition. Three days later, the defendant filed a motion to reconsider and for leave to file an amended petition for a certificate of innocence. The trial court granted the motion for leave to file an amended petition.

¶ 17    In April 2021, the defendant filed an amended petition for a certificate of innocence. In his amended petition, the defendant again alleged that he entered into a plea agreement in 1996 which included a promise that his duty to register would be governed by the Child Sex Offender Registration Act, rather than SORA. He further alleged that he was convicted of failing to register under SORA in October 2014, but that his conviction was overturned on appeal. He alleged that he was only required to register until January 10, 2006, and he asserted that nothing in the record proved he had an actual duty to register in the fall of 2014. Attached to the petition were copies of this court's summary order reversing his conviction and the SORA registration form signed by the defendant in January 1996, indicating that as of that time, his duty to register was set to expire on January 10, 2006.

¶ 18    In a responsive pleading, the State argued that the defendant bore the burden of proving his innocence by a preponderance of the evidence and that he had failed to do so. In addition, the State alleged that the defendant was required to register under SORA in the fall of 2014. Attached as an exhibit was a copy of a SORA registration form the defendant signed on September 27, 2014.

¶ 19    The court held a hearing on June 16, 2021. The defendant first argued that the court could not consider the 2014 SORA registration form submitted by the State for two reasons. He argued, "Your Honor, you are bound by this record, and *** there's no evidence in this record that shows that in 2014 the defendant was required to register. It's simply the State's say-so." He asserted that

7

he was "forced to go to the police station" to sign the SORA registration form dated September 27, 2014, and he argued that, as such, the form did not constitute proof that he was required to register at that time. The defendant next asked the court to take judicial notice of the plea proceedings in St. Clair County case No. 05-CF-376. He stated that during those proceedings, the trial judge told him that his duty to register would not be extended as a result of his conviction in that case. Finally, the defendant asserted that during the trial in this case, the court's ruling on the State's motion *in limine* prevented him from giving evidence to refute the State's claim that he was required to register at the relevant time.

¶ 20    In response, the State argued that (1) the burden of proof is on the defendant seeking a certificate of innocence and (2) the basis for the appellate decision reversing the defendant's conviction was the State's failure to present evidence regarding the defendant's duty to register, not a finding that the duty did not exist. The State further argued that the defendant's signature on the September 2014 SORA registration form constituted an acknowledgment of his obligation to register at that time. The State conceded that, although the defendant did not meet his burden of demonstrating his innocence, he satisfied the remaining requirements for obtaining a certificate of innocence.

¶ 21    Addressing the defendant, the court discussed the effect of his 2005 plea on his duty to register. The defendant reiterated his statement that the trial judge told him his plea would not extend the registration period. The court asked, "It's part of the plea, correct?" The defendant replied, "Yes, Your Honor. And the defendant relied upon that promise."[2] He argued that he met

---

[2]As we will discuss later, the transcript of the plea hearing in 05-CF-376 reveals that after the court accepted the defendant's plea, his wife asked the court whether the defendant's plea would extend his duty to register. The judge told her it would not.

his burden of proof by presenting evidence that the original registration period ended in January 2006.

¶ 22    Neither party presented testimony or additional documentary evidence. The judge took the matter under advisement, explaining that she needed time to review recent caselaw involving proceedings on petitions for certificates of innocence.

¶ 23    The court issued its ruling on June 24, 2021. The order contained the following findings: (1) the defendant was aware that "he was being told he needed to register" during the relevant time period, as evidenced by his signature on a SORA registration form on September 27, 2014; (2) in reversing the defendant's conviction, the appellate court did not determine that the defendant no longer had a duty to register; (3) the defendant was required to register "until he was advised that he was no longer required" to do so; and (4) the defendant was unable to meet his burden of proving his actual innocence "due to the fact that he executed an Illinois Sex Offender Registration Act Registration Form on September 27, 2014." The court therefore denied the defendant's request for a certificate of innocence.

¶ 24    The defendant did not file a timely notice of appeal from that ruling. In October 2022, however, he filed a notice of appeal purporting to appeal the court's rulings in three separate cases, including this one, but the notice did not identify the specific orders or judgments being challenged. The following day, the court struck the notice of appeal based on the lack of specificity.

¶ 25    On October 26, 2022, the defendant filed a petition for relief from judgment (735 ILCS 5/2-1401 (West 2022)). He alleged that his 1996 plea agreement included a promise that the 1992

9

version of the Habitual Child Sex Offender Registration Act would apply to him rather than the registration requirements of SORA.[3]

¶ 26 On November 1, 2022, the defendant filed a "Motion for Leave to File an Amended Petition for Certificate of Innocence, or, in the Alternative, Petition for Relief from Judgment." He argued that in ruling on a petition for a certificate of innocence, the court may consider only the existing trial record and the defendant's petition, along with his affidavit and any supporting materials attached to the petition. He asserted that the court thus erred by "reaching outside the record" and relying on the signed SORA form presented by the State. The defendant further contended that the trial court's decision was at odds with this court's ruling in his criminal appeal. He did not repeat his allegation concerning the applicability of the Habitual Child Sex Offender Registration Act or the Child Sex Offender Registration Act.

¶ 27 The State did not file a response to the defendant's petition or his amended petition. On December 28, 2022, after the time for filing a responsive pleading had passed, the court entered a written order. The court first denied the defendant's request for leave to file an amended petition for a certificate of innocence, explaining that a party cannot file an amended pleading after the court has entered a final judgment. Next, the court turned its attention to the defendant's request for relief from judgment. The court found that the defendant's petition did not set forth a valid basis for relief from judgment. Noting that the petition was, in effect, a request for the court to reconsider its June 2021 order denying the petition for a certificate of innocence, the court explained that the defendant should have filed a timely motion to reconsider or a timely appeal of the ruling instead. The court therefore denied the petition for relief from judgment.

---

[3]The Habitual Child Sex Offender Act was renamed the Child Sex Offender Act in 1993. See Pub. Act 87-1064, § 1 (eff. Jan. 1, 1993).

¶ 28    On January 13, 2023, the defendant filed a motion to reconsider that ruling, which the court denied on January 19. This timely appeal followed.

¶ 29                    II. ANALYSIS

¶ 30    On appeal, the defendant argues that the court erred in denying his petition for relief from judgment because it made an error in ruling on his petition for a certificate of innocence that was apparent on the face of the record. He contends that the court erroneously found that he had an obligation to register under SORA at the relevant time. Before delving into the specifics of his argument, we will review the controlling law.

¶ 31    Section 2-1401 of the Code of Civil Procedure gives trial courts the authority to vacate or modify final judgments in both civil and criminal proceedings. *People v. Thompson*, 2015 IL 118151, ¶ 28. Three different types of claims are legally cognizable under the statute, each of which derives from a previously available common law action that was replaced by the statutory procedure prescribed by section 2-1401. *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 15. Typically, the procedure is used either to challenge a void judgment (see *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104-05 (2002)) or to seek relief from a judgment based on facts outside the record which, if known to the court at the time of the original judgment, would have precluded the court from entering that judgment (see *Lammert v. Lammert Industries, Inc.*, 46 Ill. App. 3d 667, 673-74 (1977)).[4]

¶ 32    The third type of claim cognizable under section 2-1401 is based on errors of law apparent on the face of the record. *Aurora Loan Services*, 2012 IL App (2d) 110899, ¶ 15. The parties agree

---

[4]To obtain relief on this basis, a petitioner must demonstrate the existence of a meritorious claim or defense and due diligence, both in attempting to bring the claim or defense at trial and in filing the 2-1401 petition as soon as possible. *Smith v. Airoom*, 114 Ill. 2d 209, 220-21 (1986). Although the *Smith* court itself did not refer to "new facts" outside the record, the decisions it relied upon did. *Aurora Loan Services*, 2012 IL App (2d) 110899, ¶ 15 n.1.

that this is the type of claim at issue here. Such claims are derived from the common law action for a bill of review. *Id.* ¶ 16. Relief is only available in cases where the trial court's ruling was "legally inconsistent with the undisputed facts." *Id.* ¶ 21. Moreover, the error must be " 'more than the result of mistaken judgment.' " *Id.* ¶ 20 (quoting *Regner v. Hoover*, 318 Ill. 169, 170-71 (1925)). As stated previously, the error must also be apparent on the face of the record. *Id.* ¶¶ 15, 20. Because this is a question of law, our review is *de novo*. *Id.* ¶ 21.

¶ 33    We must also consider the law applicable to the proceedings leading up to the judgment the defendant sought to vacate—a judgment denying his petition for a certificate of innocence. Anyone who has been convicted and imprisoned for a crime he did not commit can file a petition requesting a certificate of innocence. *People v. Palmer*, 2021 IL 125621, ¶ 53. If the court grants the petition and issues the certificate of innocence, the petitioner can then file an action in the Court of Claims to recover damages for wrongful incarceration. See *People v. Hood*, 2021 IL App (1st) 162964, ¶ 22; *People v. Moore*, 2020 IL App (1st) 190435, ¶ 37.

¶ 34    To be entitled to a certificate of innocence, a petitioner must prove four statutory elements by a preponderance of the evidence. *Palmer*, 2021 IL 125621, ¶ 57. First, he must prove that he was convicted of one or more felonies and that he served all or part of his sentences for those crimes. 735 ILCS 5/2-702(g)(1) (West 2020). Second, he must prove any of the following: (1) his conviction was reversed on appeal, and he was acquitted on retrial (*id.* § 2-702(g)(2)(A)); (2) his conviction was reversed on appeal, and the charges were dismissed or he was otherwise not retried (*id.*); or (3) the statute defining the offense for which he was convicted was unconstitutional (*id.* § 2-702(g)(2)(B)). Third, the petitioner must prove he is innocent of the offense or offenses charged. *Id.* § 2-702(g)(3). Fourth, he must prove that he did not "voluntarily cause or bring about" his conviction through his conduct. *Id.* § 2-702(g)(4). As stated previously, the State conceded that

12

the defendant satisfied all but the third of these requirements. Thus, the only issue is whether he proved he was innocent of the charged offense.

¶ 35    In answering that question, we recognize that the statutory language indicates a legislative intent to distinguish between a finding of not guilty or a finding that the conviction was not supported by sufficient evidence and a finding that the defendant is innocent of the charged offence. *Hood*, 2021 IL App (1st) 162964, ¶ 27; *People v. Fields*, 2011 IL App (1st) 100169, ¶ 19. What a petitioner must prove to satisfy the third statutory requirement is that he did not commit the charged offense. *Hood*, 2021 IL App (1st) 162964, ¶ 27.

¶ 36    The standard of review on appeal from a court's ruling on a petition for a certificate of innocence is abuse of discretion. *Id.* ¶ 23. Here, however, the ultimate question before us is whether the court erred in denying the defendant's petition for relief from judgment. As we previously stated, we review that question *de novo*. *Aurora Loan Services*, 2012 IL App (2d) 110899, ¶ 21.

¶ 37    The defendant correctly contends that relief is available under section 2-1401 where the trial court's ruling is "legally inconsistent with the undisputed facts." See *id*. He argues that the facts in this case are undisputed because the State's failure to file a response to his petition for relief from judgment required the court to accept as true all well-pled facts in that petition. See *Robinson v. Commonwealth Edison Co.*, 238 Ill. App. 3d 436, 442 (1992). We are not persuaded.

¶ 38    It is true that a 2-1401 petitioner is not required to prove his allegations at an evidentiary hearing where the respondent does not file a responsive pleading and that the court may therefore take as true the allegations of the petition. *Id.* However, the defendant's argument overlooks the fact that to obtain the relief he requested, he must show that the judgment from which he was seeking relief—that is, the ruling denying his earlier petition for a certificate of innocence—was legally inconsistent with undisputed facts. Determining whether to grant relief on this basis

13

required the court to look at the record in the certificate of innocence proceedings to decide whether the facts in *that* proceeding were undisputed and whether there was an error of law apparent on the face of the record. As we have already discussed, the State did, in fact, respond to the defendant's petition for a certificate of innocence and did, in fact, dispute the factual allegations of that petition. As such, the court's ruling on the petition for a certificate of innocence could not be legally inconsistent with undisputed facts because the facts were not undisputed.

¶ 39     The defendant contends, however, that there was an error apparent on the face of the record in the certificate of innocence proceedings because the court "ignored" evidence attached to his petition for a certificate of innocence. He correctly asserts that the court was required to consider the evidence he presented in support of his petition. See *Hood*, 2021 IL App (1st) 162964, ¶ 23. He asserts that the court refused to consider an exhibit he presented "that provided absolute proof" he was not required to register under SORA in the fall of 2014, pointing to the copy of the January 1996 SORA registration form. We agree with the defendant that the court was required to consider this document. However, we disagree with his assertion that it proved conclusively that he was not required to register at the relevant time, and we reject his contention that the court ignored it.

¶ 40     As we discussed at length earlier, an offender's duty to register under SORA can be extended or tolled due to subsequent events. The State presented evidence that the defendant signed at least one SORA registration form during the fall of 2014. While this may not conclusively prove he was required to register, it certainly provides evidence in support of that proposition. The defendant argued that he signed the form under duress even though he did not believe he was required to register at that time; however, he did not testify as much under oath.

¶ 41     In addition, the defendant acknowledged that he pled guilty to failing to comply with SORA in 2005, something that would normally extend his duty to register. As noted previously,

14

the information charging him in this case also alleged that he had a 2005 conviction for failing to comply with SORA. The defendant alleged that his 2005 plea agreement included a promise that his duty to register would not be extended, and he asked the court to take judicial notice of the plea proceedings in that case. However, the transcript of the 2005 plea hearing does not support the defendant's allegation. Before describing the plea agreement, the prosecutor noted that the defendant was "extendable." He then described the agreement to the court, and at no point mentioned a promise not to extend the defendant's duty to register. After admonishing the defendant concerning the nature of the offenses, the potential sentences, and the rights he was giving up by pleading guilty, the court asked, "You've heard the plea negotiations. Other than that promise to you, has anybody made any other threats or promises to you to get you to plead guilty?" The defendant replied, "No, sir." After the court accepted the defendant's guilty plea, the defendant's wife asked, "I'm not sure how much longer Shane needs to register, but will any of this affect how—like, will they—will you be tacking on more years that he needs to register?" The trial judge replied, "No." Thus, although the trial judge did give the defendant's wife incorrect information after accepting the defendant's plea, there is no support for the defendant's claim that he relied on a promise his duty to register would not be extended.

¶ 42    Moreover, there is no indication in the record in this case that the court ignored the evidence the defendant presented. Indeed, the transcript of the hearing indicates that the court was aware of the exhibit presented by the defendant. For these reasons, we reject the defendant's claim that the court made an error apparent on the face of the record by failing to consider his exhibit.

¶ 43    Finally, the defendant also argues that the court erred in ruling against him because the State's "chosen strategy" during his criminal trial included a motion *in limine* to keep out evidence concerning his ongoing duty to register and, as a result, "there was no evidence or argument from

either party on whether Mr. Kitterman had an actual lawful duty to register." In support of this contention, he cites the Illinois Supreme Court's decision in *Palmer*. We find *Palmer* distinguishable and reject the defendant's contention.

¶ 44    In *Palmer*, the defendant was convicted of murder based upon allegations that he personally killed the victim by beating him to death. *Palmer*, 2021 IL 125621, ¶ 59. The State only charged him as a principal; it did not also charge him with murder on a theory of accountability, nor did the State present any evidence in support of such a theory. *Id.* ¶¶ 65-66. The defendant subsequently filed a petition for a certificate of innocence, alleging that DNA evidence later established that he could not have been the person who beat the victim. *Id.* ¶ 38. In response, the State conceded that the defendant's evidence proved he "was not the primary assailant who killed the victim." *Id.* ¶ 44. The State argued, however, that this evidence did not " 'refute the argument that [the defendant] may [have been] guilty of the victim's murder as an accessory or as a participant in a felony murder.' " *Id.*

¶ 45    On appeal from the trial court's denial of the defendant's petition, the question before the Illinois Supreme Court was whether a petitioner must prove he is innocent only "of the specific factual offense charged in his criminal case" or must prove he is innocent "of every conceivable theory of criminal liability for the offense." *Id.* ¶ 59. The supreme court agreed with the defendant that a petitioner seeking a certificate of innocence is only required to "establish his or her innocence of the offence on the factual basis *charged* in the indictment or information." (Emphasis in original.) *Id.* ¶ 64.

¶ 46    In reaching this conclusion, the court noted that "[b]ecause of the State's chosen strategy at [the] petitioner's jury trial, there [was] no evidence or any argument from either party on whether [the] petitioner acted as an accomplice." *Id.* ¶ 67. The court agreed with the defendant that he could

16

not "be expected to have access to the evidence necessary to disprove a theory of guilt that was never charged or presented during the original criminal proceedings." *Id.* The court emphasized statutory language instructing trial courts "to give 'due consideration to difficulties of proof' caused by the passage of time, unavailability of witnesses, the destruction of evidence, or other factors not caused by the petitioner." *Id.* ¶ 68 (quoting 735 ILCS 5/2-702(a) (West 2018)). For this reason, the supreme court found it "unreasonable to conclude that the legislature intended subsection (g)(3) to require a petitioner to prove his innocence of a novel theory of guilt that was never charged or presented to the trier of fact." *Id.* The court ultimately held "that subsection (g)(3) requires a petitioner to prove by a preponderance of the evidence his or her innocence of the offence as it was charged in the indictment or information that resulted in the wrongful criminal conviction." *Id.* ¶ 72.

¶ 47    Unlike *Palmer*, this case does not involve a question of whether the defendant proved by a preponderance of the evidence his innocence based on a novel theory or a factual basis not charged in the information. A duty to register under SORA is an essential element of any charge of violating its terms. Thus, proving his innocence of the offence as it was charged in the information required the defendant to prove he had no obligation to register at the relevant time.

¶ 48    In addition, requiring the defendant to prove that he did not have a duty to register does not involve the same risk of witness unavailability, lack of access to evidence, or potential destruction of evidence that concerned the supreme court in *Palmer*. The defendant could have provided sworn testimony that nothing occurred to extend his duty to register. To counteract the State's evidence that he signed a SORA registration form during the relevant period, he could have offered into evidence copies of portions of the records in the 1996 and 2005 plea proceedings that supported his claims that his duty to register would not be extended despite his 2005 plea if indeed any such

17

portions exist. Alternatively, he could have asked the court to take judicial notice of the appropriate portions of those records. Because he did not do so, the court correctly found that he failed to meet his burden of proof when it denied his petition for a certificate of innocence. Consequently, his subsequent petition for relief from judgment did not demonstrate an error of law apparent on the face of the record or a ruling legally inconsistent with undisputed facts. As such, the court did not err in finding that the petition failed to state a valid basis for relief from judgment.

¶ 49                                    III. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the court's judgment.


¶ 51    Affirmed.